**UNITED STATES of America,**

v.

**Carl SIMON, Harold Roth, Robert Kaiser and Melvin Fishman, Defendants.**

**No. 66 Cr. 831.**

United States District Court
S. D. New York.

Dec. 12, 1966.

Judgment Reversed March 3, 1967.
See 373 F.2d 649.

Sullivan & Cromwell, Spear & Hill, New York City, for defendants Simon, Kaiser and Fishman; Marvin Schwartz, Thomas E. Patton, Thomas W. Hill, Jr., New York City, of counsel.

Christy, Bauman, Frey & Christy, New York City, for Irving L. Wharton, Trustee in Reorganization for Continental Vending Machine Corp. and Continental Afco Corp.; Joseph J. Marcheso, Arthur H. Christy, Robert Giordano, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for the Government; Stephen E. Kaufman, Hugh C. Humphreys, Asst. U. S. Attys., of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Defendants Simon, Kaiser and Fishman are certified public accountants, the first two of whom are members of the prominent accounting firm of Lybrand, Ross Bros. & Montgomery (Lybrand), and the third a senior associate of that firm. They have pleaded not guilty to a six count indictment filed on October 17, 1966, charging them with conspiracy to commit mail fraud and to make false statements in violation of the Securities and Exchange Act, 18 U.S.C. §§ 371, 1001, 1341; 15 U.S.C. § 78ff, and with substantive mail fraud offenses. 18 U.S.C. §§ 2, 1341. Roth, former president of Continental Vending Machine Corporation (Continental) is also named as a defendant. The Lybrand firm and others are named as co-conspirators but not as defendants.

These criminal charges arise out of the affairs of Continental and a subsidiary which are presently in proceedings for reorganization under Chapter X of the Bankruptcy Act in the United States District Court for the Eastern District of New York.

Defendants Simon, Kaiser and Fishman have applied to this court sitting in the criminal action against them in this district for an order enjoining the Trustee in Reorganization of Continental, pending the trial of the criminal action, from taking their depositions and the depositions of other partners and employees of the Lybrand firm in two civil actions in the Eastern District of New York (at least one of which involves the same transactions which are the subject of this indictment against them) and for other relief.

Simon, Kaiser and Fishman assert that the injunctive relief which they seek is necessary in order to preserve the integrity and fairness of the criminal proceedings presently pending, to prevent the complete disclosure to the prosecution in advance of trial of their defense and the evidence upon which it will necessarily rest, and to permit them the necessary time and facilities for the intensive preparation required for a proper defense.

### I.

The facts out of which this application arises are as follows:

In July 1965 the Trustee in Reorganization of Continental commenced a civil action in the United States District Court for the Eastern District of New York against the Lybrand firm, the Meadowbrook National Bank and Roth seeking damages of $41,000,000 resulting from alleged acts of defendants in connection with the affairs of Continental. The action is being actively prosecuted by the plaintiff Trustee. Another civil action by the Trustee arising out of the affairs of Continental against a large number of individuals and corporations was commenced in that District in 1964 and is also being actively prosecuted.

For some time the Trustee of Continental has been taking the depositions of witnesses in the pending civil actions in the Eastern District in preparation for trial. Arrangements had been made to take the depositions of Simon, Kaiser and Fishman. Pursuant thereto the deposition of Simon was taken, which ran to some

1,800 pages and is still open for further testimony at this time. The deposition of Kaiser was scheduled. Before it commenced, however, the present indictment against Simon, Kaiser and Fishman was filed in this court on October 17, 1966.

When the indictment was filed, Kaiser moved in the Trustee's civil actions in the Eastern District before Judge Mishler for a protective order, under Rule 30(b), F.R.Civ.P., staying Kaiser's deposition on the ground that in view of the newly-instituted criminal action against him in the Southern District the taking of the deposition would violate his fifth amendment privilege against self-incrimination and would therefore be oppressive.

On October 24, 1966 Judge Mishler denied Kaiser's motion for a protective order in a memorandum decision. In the course of his memorandum he said that it is "clear that transactions on which the civil claims are stated, in the main, form the basis of the criminal charge." The narrow issue posed before him was whether compulsory appearance for examination was oppressive as violating Kaiser's fifth amendment rights against self-incrimination. Noting that counsel for Kaiser had declined to say whether Kaiser would assert his constitutional privilege, Judge Mishler held that the fifth amendment privilege did not excuse Kaiser from appearing for examination; that the privilege could only be asserted in answer to specific questions put to him; that Kaiser was free to assert his privilege when questions which might incriminate were put to him, and that his fifth amendment rights were thus fully protected. Kaiser was directed to appear for examination by the plaintiff Trustee on October 26, 1966. An appeal from Judge Mishler's order was dismissed by the Court of Appeals on the ground that the order was nonappealable and an application for a stay was denied on October 25, 1966. Kaiser then appeared for deposition as directed and was examined by the Trustee's counsel on October 31.

On November 1, 1966, attorneys for Simon, Kaiser and Fishman as defendants in the criminal action in this court presented to me, sitting in criminal motion part, an order requiring the Continental Trustee and the United States Attorney for the Southern District of New York to show cause why an injunction should not issue against the Trustee and his attorneys restraining them from taking the testimony of Simon, Kaiser, Fishman or any other partner or employee of Lybrand or from seeking to compel the production of any records of that firm in the civil actions pending in the Eastern District of New York until the trial of the criminal indictment here.

After hearing the attorneys for the Continental Trustee and the United States Attorney, I set down the order to show cause for argument before me in criminal motion part on November 4, 1966, and issued a temporary restraining order against taking the depositions of Simon, Kaiser, Fishman and other partners or employees of Lybrand, pending the hearing of the application. The attorneys for the Continental Trustee and the United States Attorney then accepted service of the order to show cause containing the restraining provisions and the accompanying papers.

On November 4, 1966, the return day of the order to show cause, counsel for defendants Simon, Kaiser and Fishman argued in support of the application for injunctive relief and counsel for the Continental Trustee argued in opposition. The United States Attorney took no position on the merits of the application. At the conclusion of the argument decision was reserved. Time was granted to submit additional papers and briefs [1] and the examination of defendants Simon, Kaiser and Fishman and of partners and employees of Lybrand was enjoined from the bench pending determination of the application.

---

1. The last papers submitted in the regular course were received on November 16, 1966, though additional papers were submitted on December 1 and December 9.

## II.

Does this court, sitting in the criminal action pending against the moving defendants, have the power to grant relief of the nature sought here?

■■ There is no doubt that "a fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1954). Moreover, unfairness at any stage of criminal proceedings may affect the fairness of the trial itself and imperil any judgment of conviction under a system of law such as ours which "has always endeavored to prevent even the probability of unfairness." Ibid.

■ It is clear to me that a district court having jurisdiction over a criminal action, see 18 U.S.C. § 3231, has the power in appropriate circumstances to grant injunctive relief to preserve the fairness and integrity of the criminal proceedings before it. Such power stems from either one or both of two sources.

■ First, 28 U.S.C. § 1651 (the All Writs Act) provides that United States District Courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." The All Writs Act has been held to have been properly invoked in aid of the jurisdiction of the federal courts in, for example, the areas of bankruptcy, Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937), (injunction against prosecution of suit in another District Court), stockholder litigation, Havner v. Hegnes, 269 F. 537 (8 Cir. 1920), (injunction against prosecution of action in State Court) and civil rights. Bulloch v. United States, 265 F.2d 683, 691 (6 Cir.), cert. den., 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed. 1260 (1959). Indeed, the Supreme Court in Steelman speaks of the enjoining by the bankruptcy court of suits in other federal courts even where "they have a tendency to embarrass administration * * *." 301 U.S. at 289, 57 S.Ct. at 710. It can scarcely be said that federal courts have less power where criminal proceedings are concerned. Thus a federal criminal court is empowered to grant relief affecting other litigation pending in the federal courts where "necessary and appropriate" to protect the fairness and integrity of criminal proceedings before it.[2]

■ Second, apart from the All Writs Act, the federal criminal court has other powers to grant injunctive relief to protect the fairness of the criminal proceedings before it. Whether this be said to derive from the court's inherent equity jurisdiction,[3] or from its supervisory powers over the administration of criminal justice both generally and under the Federal Rules of Criminal Procedure, is not of great consequence.

As Justice Frankfurter said in McNabb v. United States, 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943), judicial supervision of the administration of federal criminal justice by the federal courts "implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force." See also Nardone v. United States, 308 U.S. 338, 339, 342, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

The Federal Rules of Criminal Procedure, "intended to provide for the just determination of every criminal proceeding," must be construed by the courts "to secure * * * fairness in administration." Rule 2. And the courts are authorized, if no procedure is specifically

2. See the discussion of the original version of the All Writs Act in Wayman v. Southard, 23 U.S. (10 Wheat.) 1, 22–24, 6 L.Ed. 253 (1825); cf. McCulloch v. State of Maryland, 17 U.S. (4 Wheat.) 316, 413–425, 4 L.Ed. 579 (1819).

3. Cf. Rudnicki v. McCormack, 210 F.Supp. 905, 909 (D.Mass.1962), appeal dismissed sub nom Rudnicki v. Cox, 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963). See also Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

prescribed by rule, to "proceed in any lawful manner not inconsistent with these rules or with any applicable statute." Rule 57(b); cf. Petition of Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Com., 360 F.2d 103 (2 Cir. 1966).

■ These powers of the federal criminal court are not confined to the protection of an identified federal constitutional right. McNabb v. United States, supra. Nor may these powers be used only against participants in criminal proceedings pending before the court. They extend to policing the requirements of the federal rules in the interests of fundamental fairness even against persons coming within their jurisdiction who are not parties to proceedings. Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956); see Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); In re No. 32 East 67th Street, Borough of Manhattan, City of New York, 96 F.2d 153 (2 Cir. 1938). See also Wise v. Henkel, 220 U.S. 556, 31 S.Ct. 599, 55 L.Ed. 581 (1911).

The broad supervisory power vested in the criminal courts to protect proceedings before them against unfairness is dramatically emphasized in a different context by Justice Clark's recent opinion in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). That case dealt with the failure of a state trial judge to fulfill his duty to protect the defendant from inherently prejudicial publicity which saturated the community and to control disruptive influences in and out of the courtroom. A Federal criminal court certainly has at least as much power to prevent "prosecutors, counsel for defense, the accused, witnesses, court staff, [or] enforcement officers coming under the jurisdiction of the court" from engaging in conduct which is likely to result in an unfair trial. 384 U.S. at 363, 86 S.Ct. at 1522.

■ The powers vested in the federal courts to protect against unfairness in the administration of federal criminal justice must necessarily extend also to litigants and attorneys in civil actions in the federal courts where the use of federal civil process threatens such unfairness.

### III.

■■ When and under what circumstances should such power be exercised? Plainly it should not be invoked without due caution and restraint. The burden of showing the probability of "essential unfairness * * * as a demonstrable reality," Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), Sheppard v. Maxwell, supra, 384 U.S. at 351–352, 86 S.Ct. 1507, rests on the party invoking the power. In all but a few extreme cases prejudice to the accused must be identifiable. Estes v. State of Texas, 381 U.S. 532, 542–543, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Moreover, as in any other application for relief in the nature of injunction the prejudice to the party seeking relief must be weighed against any prejudice to the persons against whom relief is sought. But upon a proper showing of the probability of unfairness which may affect the course of the criminal proceedings the criminal court has not only the power but the duty to act.

### IV.

I turn then to the contentions and the facts on the present application.

### (a)

It is not seriously disputed that the subject matter of this indictment and that of the complaint in the civil action against Lybrand are in the main the same. Both charge fraud with respect to a number of the same transactions. It may be noted that this is not a routine criminal case. The indictment, insofar as I am aware, is the first in which charges of mail fraud based on transactions of this nature have been brought against leading certified public accountants. It has received substantial publicity and comment in the press.[4]

---

4. N.Y.Times, Oct. 18, p. 61, col. 7; Wall St. Journal, Oct. 18, p. 32, col. 2.

As appears from the complaint and the indictment, these charges involve a very complicated set of facts which resulted in an alleged loss of over forty million dollars to Continental, forcing it into Chapter X proceedings. The difficulty and complexity of the matters involved is to some extent indicated, among other things, by the printed complaint of some fifty pages in the civil action against Lybrand as well by the fact that, as I have mentioned, the deposition of defendant Simon taken before the indictment was returned (and which is still open) has already run to some 1,800 pages. Moreover, the transcript of the two days of testimony of defendant Kaiser, taken before this application was made, shows that the questioning of Kaiser by counsel for the Trustee, largely in the nature of cross-examination, has been sharp and searching.

Defendants Simon, Kaiser and Fishman urge that if their depositions are taken at this time by the Continental Trustee in the pending Eastern District civil actions it is reasonably probable that they will suffer irreparable prejudice in the defense of the criminal action against them and that the resulting unfairness may well impair the integrity of the criminal proceedings. They say that the continuation of these examinations will, in all likelihood, result in a disclosure to the prosecution before trial of their entire defense in the criminal action; that they will be forced to reveal the nature and details of their defense, the evidence on which it will be based, their trial tactics and strategy and the positions which they will take on the stand; that this will permit the prosecution to circumvent the restrictions on discovery in the Federal Rules of Criminal Procedure; that the prosecution will be given an undue and highly unfair advantage over the defense; and that if injunctive relief is not forthcoming the resulting unfairness is likely to impair the integrity of the trial and to have serious due process implications.

Defendants' position does not rest on protection of their rights against self-incrimination under the fifth amendment. Indeed, counsel for the defendants has flatly stated to the court that the defendants have no intention of asserting their fifth amendment privilege and will not do so under any circumstances. Defendants state that because of their professional position and standing in the business community they are in no position to take the fifth amendment even if they were so minded. They insist that they are wholly innocent of the charges against them, that they wish to have all the relevant facts and circumstances completely brought out in the course of their defense at the proper time, but that they should not be compelled to do so before trial.

The Trustee points to the fact that the Government is not a party to the civil suit, and that his examinations are not being conducted for the purpose of exposing the defense in the criminal action but for legitimate purposes of the civil suit. As mentioned, the United States Attorney originally did not take any position on the merits of the application. But it is significant that he strenuously opposed the suggestion, made during the course of argument, that there might be an interdiction of any communications between the Trustee and the prosecution concerning the depositions or their subject matter.

It is not denied that during the course of the Trustee's investigations and preparations for trial information affecting the criminal prosecution, transcripts of examination and exhibits have been available to the United States Attorney. That, of course, was entirely proper and to be expected of a diligent prosecutor.

It also can be reasonably anticipated that if the depositions of the moving defendants continue to be taken, the United States Attorney will have full information as to their contents with consequent full disclosure of defendants' case in advance of trial. That there is no deliberate collusion between the Trustee and the United States Attorney's Office is not controlling. The fact of the matter is that if the examinations of these defendants in the civil action are continued, the

prosecution is likely to discover—and make use of—vital information about the defense which it could not otherwise secure. The problem here transcends that of dealing with specific answers to specific questions, which may or may not be adequately handled by the trial court. Rather it relates to the disclosure of the defendants' entire case and the evidence upon which they will rely.

#### (b)

It is unnecessary to dwell at any length on the wide differences between discovery in civil and criminal cases. The deposition and discovery process in civil litigation rests upon a broad footing of full mutual disclosure of information. On the other hand, the Rules of Criminal Procedure restrict disclosures to a minimum. As Judge Wisdom said in *Campbell v. Eastland*, 307 F.2d 478, 487 (5 Cir. 1962):

"There is a clear-cut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.

\* \* \* \* \* \*

" \* \* \* While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive. Compare Rules 26 through 37, Fed.R.Civ.P., \* \* \* with Rules 15, 16, and 17, Fed. R.Crim.P., \* \* \*. Separate policies and objectives support these different rules."

The contrasts between the policies and objectives of the civil and criminal procedure are particularly apparent in the provisions of the respective rules relating to depositions. The civil rules permit both sides the broadest latitude in taking the deposition of any person, including a party, on any matter "relevant to the subject matter involved in the pending action." Rule 26(b), F.R.Civ.P. The scope of examination even extends to the identity and location of persons having knowledge of relevant facts and matters reasonably calculated to lead to the discovery of admissible evidence. Full cross-examination of adverse parties or hostile witnesses is permitted. Rule 26 (b), (c), F.R.Civ.P.

Of course, in criminal cases depositions of parties are not permitted at all and depositions of witnesses are confined to those who are absent, as provided in Rule 15, F.R.Cr.P. What little discovery of documents, statements and tangible objects is allowed to the prosecution, is subject to severe restrictions even under the liberalized provisions of new Rule 16.[5]

Thus, while in civil litigation "[t]he way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial," *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451 (1947), criminal litigation has made no such concessions to modern concepts. It is still conducted largely on the "sporting" theory of justice. That only serves to emphasize the necessity for the rules of the game being applied equally to both prosecution and defense so that neither can obtain unfair advantage over the other.

If there is reasonable probability that either the prosecution or the defense will be able to secure a full disclosure of the other side's case while relying on the

---

5. Rule 16(c) reads in pertinent part:
 "(c) *Discovery by the Government. If the court grants relief sought by the defendant under subdivision (a) (2) or subdivision (b) of this rule,* it may, upon motion of the government, condition its order by requiring that the defendant permit the government to inspect and copy or photograph scientific or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, which the defendant intends to produce at the trial and which are within his possession, custody or control, *upon a showing of materiality to the preparation of the government's case and that the request is reasonable.*" (Emphasis added.)

rules to prevent disclosure of its own, there is, as I view it, unfairness likely to affect the result of the trial of such importance and significance as to require the intervention of the criminal court to ensure the fair administration of criminal justice and the rules governing it.

(c)

The practical effect of denying injunctive relief against the taking of the depositions of the three criminal defendants at this time is likely to permit the prosecution to have full disclosure in contravention of the protections given defendants by the Rules of Criminal Procedure. The question to be decided here is whether requiring the defendants to submit to examination in these related civil actions will so prejudice their rights to defend themselves against the criminal charges as to justify this court in using its injunctive powers.

 The problem is by no means novel. It has been consistently held that where both civil and criminal proceedings arise out of the same or related transactions an objecting party is generally entitled to a stay of discovery in the civil action until disposition of the criminal matter. This has been true whether the defendant in the criminal case seeks to use the civil rules to obtain disclosure of the Government's evidence, see Campbell v. Eastland, 307 F.2d 478 (5 Cir. 1962), cert. den., 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963); United States v. $2,437.00 United States Currency, D.C., 36 F.R.D. 257 (E.D.N.Y.1964); United States v. Steffes, 35 F.R.D. 24 (D. Mont. 1964); United States v. Maine Lobstermen's Association, 22 F.R.D. 199 (D. Maine 1958); United States v. Linen Supply Institute of Greater New York, 18 F.R.D. 452 (S.D.N.Y.1955); United States v. Bridges, 86 F.Supp. 931 (N.D. Calif.1949); United States v. A. B. Dick Co., 7 F.R.D. 442 (N.D.Ohio 1947); Zara Contracting Co. v. State of New York, 22 A.D.2d 415, 256 N.Y.S.2d 98 (3rd Dep't.1965); United States v. One 1964 Cadillac Coupe, 41 F.R.D. 352, (S. D.N.Y.1966); United States v. One 1963

Chevrolet Sedan, Misc. No. 63–M–1239 (E.D.N.Y.1963), or whether the Government seeks a similar advantage to secure evidence not otherwise available to the prosecution. See Perry v. McGuire, 36 F.R.D. 272 (S.D.N.Y.1964); Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co., Inc., 14 F.R.D. 333 (E.D.Pa. 1953); National Discount Corp. v. Holzbaugh, 13 F.R.D. 236 (E.D.Mich.1952). But see Hiss v. Chambers, 8 F.R.D. 480 (D.Md.1948).

 The controlling consideration in these cases appears to be the protection of the paramount public interest in ensuring the essential fairness of criminal proceedings under the Rules of Procedure laid down for their conduct. Thus while Paul Harrigan & Sons, Inc., supra, seems to be predicated on the probability that the attempted discovery would violate the defendants' fifth amendment privilege against self-incrimination, Perry v. McGuire, supra, and National Discount Corp. v. Holzbaugh, supra, apparently were based on the broader ground of the inherent unfairness of compelling disclosure of a criminal defendant's evidence and defenses before trial. And it may be noted that in the many cases where civil discovery has been stayed to prevent disclosure of the evidence to be used by the Government in the criminal prosecution, no fifth amendment self-incrimination question could arise.

It would be wholly unrealistic to suppose that the prosecution in a criminal proceeding would not gain a very substantial advantage over the defendants if the nature of their defense and the evidence on which the defense was based were disclosed to the Government in advance of—and indeed here long in advance of—trial. Every experienced trial lawyer knows well the advantages the prosecution would be likely to gain under such circumstances.

With such material at its disposal a zealous prosecutor would be able to tailor his case to overcome anticipated defenses and avoid any possibility of surprise. If the defendants took the stand in their own defense, as appears probable in this case,

there will already have been a thorough cross-examination of each of them by able and zealous counsel, a very material advantage to the prosecution in conducting its own cross-examination. The advantages gained to the prosecution might well be sufficient to tip the scales in favor of conviction particularly in a close case. Under these circumstances the prosecution should not be permitted "to obtain information through the medium of the civil proceedings to which [it was] not entitled, or in a manner in which [it was] not entitled, under the criminal rules." United States v. Maine Lobstermen's Ass'n, D.C., 22 F.R.D. 199, 201 (D.Maine 1958) ; see Campbell v. Eastland, supra. This would circumvent the limitations provided by the criminal rules to ensure the fair administration of criminal justice from the standpoint both of the defense and prosecution.

It is no answer to the contentions raised here to say that injunctive relief should not be granted against the Trustee because the extent of the prejudice or harm which might result to the criminal defendants cannot be presently evaluated in view of the mass of information already available about the transactions which are the subject of the indictment and the civil complaint. That argument defeats itself. The more complicated and voluminous the facts and the more difficult the issues, the more probable it is that such harm may occur.

■ Nor do the facts that two of the defendants have appeared before the Grand Jury, that Simon has already been examined by the Trustee at length and Kaiser to some extent, and that other persons connected with Lybrand have also been examined indicate that defendants should be denied relief. Each of the three defendants has been newly-charged individually with serious crimes. It has not been shown here that the full nature and details of their respective individual defenses to those charges have been already exposed. Indeed it is likely that the details of their defenses are still being formulated. It is precisely because it is difficult to forecast the precise harm

which may result to the defendants that injunctive relief is necessary for their protection.

■ Nor is it a solution to the problem raised here to say that defendants could fully protect themselves from any disclosure by raising their fifth amendment privilege against self-incrimination when specific questions are put to them. Not only have they taken the position that they will not assert their fifth amendment privilege but they do not in any way rely on their fifth amendment rights on this application.

■ The rights on which defendants rely here are those governing the conduct of criminal proceedings with a view to assuring the fair administration of criminal justice to all parties. The supervisory powers of the federal courts over the administration of criminal justice are not confined to protecting the accused against fifth amendment violations. Thus in McNabb v. United States, supra, the Supreme Court did not rely on fifth amendment rights against self-incrimination as a ground for denying the prosecution the use of incriminating statements by the accused since the statements appeared to have been voluntary. It held, however, that the statements could not be admitted because defendant's statutory rights to a prompt arraignment had been violated. As the Court said, the scope of the power resting in the criminal courts was "not confined to ascertainment of Constitutional validity." 318 U.S. at 340, 63 S.Ct. at 613. It held the prosecution was barred from using the statements "[q]uite apart from the Constitution." Id. at 341, 63 S.Ct. 608. See Nardone v. United States, supra. Compare Casenote, 76 Harv.L.Rev. 838 (1963).

Similarly, if the search and seizure provisions of Rule 41 of the Rules of Criminal Procedure are violated it is not a prerequisite to relief by the federal criminal court that the violations rise to constitutional dimensions. In Rea v. United States, supra, for example, a federal agent was enjoined from testifying in a state criminal trial concerning material obtain-

ed by a search and seizure in violation of Rule 41 of the Federal Rules of Criminal Procedure. The court said:

"A federal agent has violated the federal Rules governing searches and seizures—Rules prescribed by this Court and made effective after submission to the Congress. * * * The power of the federal courts extends to policing those requirements and making certain that they are observed." 350 U.S. at 217, 76 S.Ct. at 294.

And it went on to say "[t]o enjoin the federal agent from testifying is merely to enforce the federal Rules against those owing obedience to them." Ibid.

■ I see no reason why a defendant should be compelled to assert his fifth amendment privilege against self-incrimination against his will in order to protect other and different rights granted him by rule, statute, constitution, or even considerations of basic fairness. The situation presented here is plainly an unusual one. It is not often that defendants elect to eschew their fifth amendment privilege at whatever cost.[6] It may be said that though the assertion of the privilege theoretically carries no stigma and in practical effect should not, defendants' election not to take the privilege is quite understandable in the light of much current public reaction. As a matter of "common sense," many disabilities may flow from invocation of the fifth amendment. Hook, Common Sense and the Fifth Amendment (1957); see Ullmann v. United States, 350 U.S. 422, 430–431, 76 S.Ct. 497, 100 L.Ed. 511 (1956). See also Nelson v. County of Los Angeles, 362 U.S. 1, 80 S.Ct. 527, 4 L.Ed.2d 494 (1960); Lerner v. Casey, 357 U.S. 468, 78 S.Ct. 1311, 2 L.Ed.2d 1423 (1958). I see no reason why defendants should be penalized for electing to relinquish the privilege by being deprived of protection against the violation of other rights resting on an entirely different footing.

Finally, no alternative remedy appears to afford defendants adequate relief in the circumstances. This is a case where the "uncertainty surrounding the adequacy" of available remedies justifies action by the District Court retaining jurisdiction. Township of Hillsborough, Somerset County v. Cromwell, 326 U.S. 620, 626, 66 S.Ct. 445, 90 L.Ed. 358 (1946).

The suggestion that the prosecution should be denied access to any depositions of the defendants hereafter taken by the Trustee and that communications between the Trustee and the prosecution regarding such depositions or their subject matter should be forbidden (a suggestion strenuously resisted by the United States Attorney) is an unrealistic approach to the problem. In view of the scope and complexity of the case and the large amount of relevant testimony and exhibits it would be virtually impossible to isolate the subject matter covered by the depositions from the volume of material to which the prosecution was legitimately entitled. Indeed, were such a direction given it might seriously handicap the prosecution in the legitimate preparation of its case as the United States Attorney has urged. These considerations point up the difficulties which are implicit in this highly unusual situation.

■ The suggestion that the trial court might suppress the depositions is equally unrealistic and impractical. Even if a motion to suppress would lie under Rule 41(a), F.R.Cr.P. (and this is highly doubtful to say the least), it is likely that it could be granted only on the ground that the prosecution had improperly connived at the taking of the depositions. And if there was such connivance the defendants would be entitled to relief on their present application. Furthermore, once the depositions of the defendants are taken the cat is out of the bag and the major damage is done. If, as appears likely, defendants are irreparably preju-

---

6. In addition, both Kaiser and Simon, who have already given testimony on deposition may well be foreclosed from now invoking the fifth amendment in any event by reason of "waiver." E.g., Rogers v.

United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896).

diced it may well be too late for the trial court to take corrective measures to ensure the fairness and integrity of the trial.

I find therefore that there is a reasonable probability that defendants Simon, Kaiser and Fishman will suffer substantial and irreparable prejudice in their defense of the criminal charges against them if the Trustee continues to take their depositions at this time and that it is reasonably likely that such unfairness will result as threatens the integrity of these criminal proceedings.

## V.

I recognize that the civil litigation brought by the Continental Trustee in the Eastern District affects the interests of the large number of public shareholders of Continental and that the reorganization of that large corporate entity and its subsidiary under Chapter X of the Bankruptcy Act is to a large degree dependent on the results of that litigation. Any prejudice to these substantial public interests which may result from delay in taking the depositions of Simon, Kaiser and Fishman or any others in these civil suits must of course be balanced against any prejudice to the criminal defendants if the depositions proceed. However, the Continental Trustee has failed to persuade me that any prejudice of substance will result if the depositions of Simon, Kaiser and Fishman are delayed for a reasonable period.

It is stated in the moving papers, and not denied, that the Trustee intends to take the depositions of some 32 persons in the course of the preparation of the civil litigations in which he is plaintiff, some twenty of whom are not partners or employees of Lybrand. The deposition of defendant Simon has already been substantially completed. Kaiser's deposition has been commenced. Fishman's is still to come.

Nothing has been shown to me indicating the necessity for any immediate examination of Fishman or the continuance of the examination of Simon and Kaiser at this stage of the civil pretrial proceedings. The civil case against Lybrand has been pending since August 1965. It appears that it still will be a long time before the depositions of the many witnesses other than Simon, Kaiser and Fishman can be completed. No reason has been advanced why the depositions of the other witnesses and parties cannot proceed expeditiously if the examinations of the three criminal defendants are postponed for a reasonable time. The most that can be said on the facts before me is that the Trustee will be inconvenienced by a delay in examining these three defendants.

I find that when the effect of a reasonable postponement of the defendants' depositions on the civil actions pending in the Eastern District and the public interests there involved is balanced against the prejudice which may result to the defendants from the conduct of such examinations at the present time, the scales are tipped overwhelmingly in defendants' favor.

## VI.

It is suggested by the Continental Trustee that Judge Mishler's decision in the Eastern District civil litigation denying Kaiser's motion for a protective order under Rule 30(b), F.R.Civ.P., should control the present application. I do not agree.

Of course Judge Mishler's decision deals only with a motion of defendant Kaiser. Neither Simon nor Fishman have made any applications in the civil suits and plainly as individual criminal defendants could not be bound by any decision on a motion by another.

As to Kaiser, the issues before me are different from and much broader than those passed upon by Judge Mishler. As I have previously mentioned, the question before him was whether appearance by Kaiser for examination would be

oppressive because it would be in violation of his fifth amendment rights against self-incrimination. Judge Mishler held only that the fifth amendment privilege did not protect against appearance for examination but must be asserted in response to specific questions put to the witness. He denied Kaiser's motion for a protective order under Rule 30(b) on that ground.

Since then the three criminal defendants have made it clear that none of them will assert his fifth amendment privilege.

As the previous discussion has indicated, the questions posed before me on the present application are not questions relating to fifth amendment rights against self-incrimination. They concern the different rights of the defendants to a fair criminal trial under the procedures provided by the Rules of Criminal Procedure. They involve the power and the duty of the federal criminal court to protect such rights and to take such action as may be necessary to prevent unfairness in the criminal proceedings before it—unfairness that well may also have due process implications which cannot be accurately forecast at this writing.

Having found that it is reasonably probable that if these depositions are taken now essential unfairness will result which will threaten the integrity of the criminal proceedings, this court may not shirk its duty to protect the criminal process before it from that probability.

## VII.

Thus far the discussion has been concerned mainly with the depositions of the three criminal defendants. The application of the defendants seeks additional relief going considerably beyond those three depositions. Those claims must also be disposed of.

(a) Defendants ask that the Trustee be enjoined from examining any other partners or employees of the Ly-

brand firm which is named in the indictment as a co-conspirator. It has not been demonstrated to me that any substantial prejudice to the defendants is likely to accrue if such examinations are continued by the Trustee, in the light of the information already made available by the firm. The Trustee will not be barred from taking the depositions of any persons other than the three criminal defendants.

(b) Defendants ask that the Lybrand files, now held by agreement in a conference room at the Lybrand offices and available equally to counsel for the Lybrand firm and the Trustee, should for all practical purposes be placed in the sole custody of the defendants or their counsel. These files and documents appear to have been fully available at all times to the Trustee, and indeed, to the Government. There is no reason why they should not continue to be held as they now are under presently existing arrangements.

(c) Defendants urge that unless the examinations of other Lybrand partners and employees are stayed and the Lybrand files and documents are made available exclusively to them and their counsel, they will be unable properly to prepare for trial. I see no reason why this should be so. Depositions can only be taken one at a time. There should be ample time for counsel for the defendants to confer with any Lybrand partners or employees. The Trustee is prepared to cooperate in making any documents which are needed fully available for use and study in aid of the criminal defense. The criminal defendants have ample legal manpower at their disposal. There is no likelihood that the defendants' preparation for trial will be unduly hampered by the continuation of the Trustee's examinations of Lybrand partners and employees or from continuation of the present arrangement with respect to the Lybrand documents. No injunctive relief on these grounds is justified.

## VIII.

There remains the question of remedy to be afforded Simon, Kaiser and Fishman.

In fashioning such remedy it is plainly important that there be a minimum of interference with the conduct of the civil actions by the Continental Trustee.

As I have indicated, a reasonable postponement of the depositions of the individual criminal defendants does not appear to be much more than an inconvenience to the Trustee and his counsel and will not substantially affect the orderly progress of the civil actions.

Both the prosecution and the defendants have stated that they wish to try the criminal case in this court as promptly as possible. The Government estimates that it will be ready for trial by mid-February 1967. The defendants expect to be ready by early April. Given maximum efforts by both sides to complete their preparation for trial, it can be expected that the criminal trial could get under way some time between those dates, or perhaps even earlier.

Taking into account all the circumstances here, the Trustee will be enjoined for a period of ninety (90) days from the date of the order to be entered on this opinion from continuing the depositions of defendants Simon and Kaiser and from taking the deposition of Fishman in the civil actions in the Eastern District. At the conclusion of that period defendants may apply for further relief with respect to such depositions on good cause shown.

Beyond this all other injunctive relief which the defendants seek is denied and any and all other restraints upon the Trustee hitherto imposed are hereby dissolved.

An order will be settled so providing on two (2) days notice.

The foregoing opinion constitutes my findings of fact and conclusions of law on this application for injunctive relief.