In the matter of **COMMONWEALTH FINANCIAL CORPORATION** and its subsidiaries, Neighborhood Finance Co., Inc. and Neighborhood Finance Co., Inc. of Pennsylvania, Debtors.

No. 30108.

United States District Court
E. D. Pennsylvania.

July 11, 1968.

Leon S. Forman, Wexler, Mulder & Weisman, Philadelphia, Pa., for trustees.

Alexander Adelman, Sidney Chait, Adelman & Lavine, Marcus Manoff, Dilworth, Paxson, Kalish, Kohn & Levy, Philadelphia, Pa., for Morise Thal.

Edwin H. Nordlinger, Richard V. Bandler, New York City, Securities & Exchange Commission.

I. Grant Irey, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Bank Lenders Committee.

## OPINION

JOHN MORGAN DAVIS, District Judge.

Under authority of Section 167 of the Bankruptcy Act, 11 U.S.C. § 567, the trustees in this Chapter X proceeding were granted leave to investigate the "Acts, conduct, property, liabilities and financial condition of the debtors", to include an examination of the "directors and officers of the debtors." [1] Subsequently, the Securities and Exchange Commission (S.E.C.) was authorized to participate and assist in the aforementioned investigation.[2]

We have since been apprised by the petitioner that the S.E.C. has apparently been conducting a separate and independent investigation of the affairs of the debtors, under the provisions of Section 20(a) of the Securities Act of 1933,[3] and Section 21(b) of the Securities Exchange Act of 1934.[4] This investigation has included an examination of the petitioner (by his own assertion) pursuant to "continuing subpoena" by the S.E.C. We shall assume, *arguendo*, that the petitioner may be recalled by the S.E.C. either concurrent with, or subsequent to the trustees' Section 167 investigation. It is possible that the petitioner may be subjected to criminal prosecution if the S.E.C. investigation would indicate that such action is appropriate.[5] At this time, however, there has been no criminal proceeding instituted against the petitioner; this opinion will be predicated upon that premise.

After receiving written notice of depositions by the Chapter X trustees (with participation by the S.E.C.)[6], the petitioner, Morise Thal, president of the debtor corporations,[7] filed the motion for a protective order presently before

---

1. See Petition of Trustees for Order Directing Investigation of Debtors and Examination of Witnesses Under Section 167 (document 34), entered on March 21, 1968. This Order was subsequently amended on May 23, 1968, to authorize examinations by way of depositions (document 45).

2. See Petition of Trustees for Order Authorizing the Securities and Exchange Commission to Participate In Examination (document 41), filed on March 29, 1968.

3. 15 U.S.C. § 77t(a), which states, in relevant part:
 Whenever it shall appear to the Commission * * * that the provisions of this subchapter [domestic securities] * * * have been or are about to be violated, it may * * * require * * * such person to file * * * a statement * * * under oath * * * as to all the facts and circumstances * * *.

4. 15 U.S.C. § 78u(b), which states, in relevant part:
 For the purpose of any such investigation, [securities exchanges] * * * the Commission * * * is empowered to * * * subpena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence * * *.

5. 15 U.S.C. § 77x states, in relevant part:
 Any person who willfully violates any of the provisions of this subchapter [Securities] * * *, or any person who willfully, in a registration statement filed under this subchapter, makes any untrue statement of a material fact or omits to state any material fact * * * shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both.
 See also 15 U.S.C. § 78ff(a) providing a maximum of $10,000 fine and/or two years imprisonment for wilful violation of securities exchange regulations, or for filing false registration statements.

6. Written notice was tendered to the petitioner on June 6, 1968 (document 48).

7. The petition for reorganization filed December 4, 1967 was signed by Thal as president of the principal and 2 subsidiary debtor corporations. On January 29, 1968, Thal was retained by the trustees as "Chief Operating Officer" (document 10).

the Court,[8] seeking a stay of any further attempts to depose or otherwise examine him by the trustees, during the pendency of the S.E.C. investigation.

## I.

Preliminarily, the petitioner is contesting the authority of the S.E.C. to participate in an investigation ostensibly conducted under Section 167 of the Bankruptcy Act. It is true that the Act does not expressly authorize S.E.C. participation in the Section 167 investigation. However, this section clearly states that the trustees * * *

> may, subject to the approval of the judge, employ such person or persons as the judge may deem necessary for the purpose of assisting the trustee in performing the duties imposed upon him under this chapter.

Having just obtained the requisite leave of court, In re Flamingo Hotel Co., 81 F.2d 749 (7th Cir. 1936), the only question remaining is whether this statute contemplates the "employment" (albeit without compensation) of the S.E.C. for the purpose, *inter alia* of assisting in a Section 167 investigation.

 Under Section 208 the Bankruptcy Act, 11 U.S.C. § 608, the S.E.C. if approved by the Court, is given the right to proceed as a party in interest "with the right to be heard on all matters * * *." In In re Otis & Co., 104 F.Supp. 201, 203 (N.D.Ohio, 1952), it was observed that Congress, by authorizing participation by the S.E.C. in a Chapter X reorganization:

> * * * intended mutual assistance between the court and the Commission and that to insure harmony the grants of power alluded to above [Sections 172 and 208 participation] were intended to subject the Securities and Exchange Commission to the orders of a reorganization court * * *.

If the court is statutorily vested with discretion 1), to authorize participation *generally*, under Section 208, and 2), to limit S.E.C. participation *specifically* when deemed necessary, *In re Otis*, supra, and cases cited therein, it follows that the Court has sufficient authority to permit S.E.C. participation for particular aspects of a Chapter X reorganization, such as the Section 167 investigation at issue. In so holding, however, we wish to reemphasize that participation is discretionary with the Court In re Morris White Properties Corp., 21 F.Supp. 635 (E.D.N.Y.1937). Since abuse of that discretion has not been established or even alleged, participation by the S.E.C. in the contemplated Section 167 investigation will be permitted.

## II.

Turning to the merits of petitioner's motion, we agree that it is quite possible that the scope of the S.E.C. investigation may, to some extent, encompass the same subject matter as the Section 167 investigation conducted under the auspices of the trustees. Both statutes essentially contemplate to some extent, the devolution of fraudulent practices by persons in control and operation of the debtor corporation.[9] Par-

---

8. On June 13, 1968, an effort was made by the trustees to depose Thal. However, he refused to be sworn, apparently on advice of his counsel. Subsequently, the trustees filed a "Motion of Trustees for Order Directing Witness to be Sworn and To Testify", which is also presently before the Court. (document 55).

9. For example Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) states, in relevant part, that:

> It shall be unlawful for any person in the offer or sale of any securities * * * directly or indirectly—
> (1) to employ any device, scheme, or artifice to defraud, or
> (2) to obtain money or property by means of any untrue statement of a material fact * * * or
> (3) to engage in any transaction * * * which operates * * *

enthetically, we observe that the S.E.C. apparently shares this view, since the petitioner was recently warned by its counsel that:

> \* \* \* as a witness \* \* \* the facts developed in these proceedings conducted by the trustees \* \* \* may constitute violations of the Federal Securities laws including but not limited to the Securities Act of 1933 and Exchange Act of 1934 \* \* \*. Since any evidence you give could be used against you, you may refuse to give any testimony \* \* \* [10]

### III.

Unless the contemplated Section 167 deposition is stayed, the petitioner asserts that his privilege against self-incrimination under the 5th Amendment to the Constitution will be infringed. This assertion is further developed by hypothesizing that the S.E.C. is empowered to grant "full constitutional immunity" from the imposition of any penalty in connection with the S.E.C. investigation,[11] but that no such arrangement is available under Chapter X of the Bankruptcy Act. Thus, it is asserted that the S.E.C. could conceivably play one investigation against the other, eliciting (and utilizing in a criminal proceeding) information which would otherwise be immune pursuant to the statutes cited in footnote 11, below. We do not agree. While it is true that no comparable statu-

tory immunity may be offered by the trustees during the Section 167 investigation, the petitioner is always free to assert his 5th Amendment right against self-incrimination at any time. The privilege may be asserted in any proceeding, " \* \* \* be it criminal or civil, administrative or judicial, investigatory or adjudicatory." United States v. Goldsmith, 272 F.Supp. 924, 926 (E.D.N.Y. 1967), citing Murphy v. Waterfront Commission, 378 U.S. 52, 94, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

Nor would the privilege against self-incrimination extend only to matters which are directly related to the ultimate objective of the trustees' investigation, namely, to effect an equitable reorganization. The petitioner may assert his 5th Amendment rights to protect himself from " \* \* \* any disclosures which \* \* \* [he] may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used." *Murphy*, supra, recently cited with approval in Matter of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967). Armed with such protection, the petitioner neither needs, nor is constitutionally, statutorily or equitably entitled to the protective order which he now seeks.

### IV.

The fact that a contemplated area of inquiry may be *potentially* in-

---

as a fraud or deceit upon the purchaser.

By comparison, Section 167 of the Bankruptcy Act, 11 U.S.C. § 567 requires the trustees, pursuant to their investigation, to " \* \* \* report to the judge any facts ascertained by him [trustee] pertaining to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the [debtor's] estate." The scope of the Section 167 investigation is rather comprehensive, and includes " \* \* \* the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business \* \* \* and any other matter relevant to the proceeding \* \* \* ", including authority to " \* \* \* examine the directors and officers of the debtor \* \* \* "

10. Oral deposition of Morise Thal, June 13, 1968, p. 6 (document 56).

11. Section 22 of the 1933 Act, 15 U.S.C. § 77v(c), pertaining to securities, states in relevant part:

No person shall be excused from attending and testifying \* \* \* on the ground that the testimony \* \* \* may tend to incriminate him \* \* \*; but no individual shall be prosecuted \* \* \* concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify.

See also Section 21 of the 1934 Act, 15 U.S.C. § 78u(d), which provides for a similar provision regarding securities exchanges.

criminatory does not authorize or indeed require a blanket invocation of the privilege against self incrimination:

> * * * it is not and has never been the law that the privilege disallows the asking of *potentially* incriminatory questions or authorizes the person of whom they are asked to evade them without *expressly* asserting that his answers may tend to incriminate him (emphasis added).

Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 108, 81 S.Ct. 1357, 1416, 6 L.Ed. 2d 625 (1961).

Recently, in In re Hoffman Can Corp., 373 F.2d 622 (1967), the Third Circuit rejected a rather siimlar effort to invoke a blanket privilege against self-incrimination. In *Hoffman,* the officers of a bankrupt corporation refused to file a statement of affairs,[12] together with supporting schedules, claiming that certain responses contained therein may tend to be incriminating. In so deciding, the Third Circuit substantially relied upon United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), a leading decision in the area of income tax law, where it was emphasized that:

> * * * a claim of self-incrimination against every question * * * would be 'virtually frivolous.'

Although it is theoretically conceivable that the petitioner Thal may find every question objectionable when propounded, it is anticipated and indeed hoped that he has not become so deeply embroiled in questionable practices, that the need assert his 5th Amendment privilege to *each* and *every* question of the trustees.[13]

### V.

Both sides have placed forceful reliance upon some facet of United States v. Simon, 262 F.Supp. 64 (S.D.N.Y.1966), reversed, 373 F.2d 649 (2nd Cir. 1967).[14]

In *Simon,* a judge of the Southern District of New York, before whom a *criminal* proceeding for mail fraud was pending, enjoined for a period of 90 days, the further deposing of defendants who had also been sued in a *civil* proceeding pending in the Eastern District of New York. The latter action was being prosecuted by Chapter X trustees, alleging that the common defendants had conspired to despoil assets of the debtor corporation, by *inter alia,* preparing and certifying false financial statements.[15]

Although *Simon* presented a factually stronger case for some form of protective order than the instant case, since the defendants had already been indicted in the criminal proceeding, the Second Circuit nonetheless decreed that additional protection was unnecessary:

> The fact that additional testimony thereby becomes available to the government is merely the natural by-product of another judicial proceeding; and to that extent it * * * is not discovery * * *.

12. As required by Sections 7 to 9 of the Bankruptcy Act, 11 U.S.C. § 25–27.

13. Nor would there be any obligation on the part of the trustees to refrain from directing inquiries to the petitioner because the answers may be incriminating. United States v. Alaimo, 191 F.Supp. 625, 630 (M.D.Pa.1961) aff'd, 297 F.2d 604 (3rd Cir. 1962) and cases cited therein.

14. Although reversed by the Second Circuit, Mr. Justice Harlan as Circuit Justice, stayed the execution and enforcement of the Circuit Court decree. Certiorari was granted, sub nom. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591 (1967), but subsequently vacated, as moot. 389 U.S. 425, 88 S.Ct. 577, 19 L.Ed.2d 653 (1968).

15. In the criminal proceeding pending in the Southern District, the defendants were charged with: mail fraud, 18 U.S.C. § 1341; filing false and misleading reports in violation of the S.E.C. Act of 1934, 15 U.S.C. § 78ff; and violation of an analogous provision of the Criminal Code, 18 U.S.C. § 1001.

The Court then continued:

> Indeed the constitutional rights of the appellees are unimpaired; here they are in suspension because the appellees have not chosen to avail themselves of their Fifth Amendment privileges. United States v. Simon, supra, 373 F.2d at p. 652.

We recognize that the reasoning manifested by the Second Circuit in *Simon* has been subjected to rather diverse interpretation. Compare e. g., Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 269 F.Supp. 540 (E.D.Pa.1967), with United States v. American Radiator & Standard Sanitary Corp., 272 F.Supp. 691 (W.D. Pa.1967) reversed, 388 F.2d 201 (3rd Cir. 1967).[16] Whether any criminal action will ultimately be instituted is presently a matter of conjecture or, at best may be characterized as the professional opinion of the petitioner or his counsel. This is insufficient justification for the sweeping protection which the petitioner seeks.

## VI.

Finally, it is asserted that the trustees will not be prejudiced, since they are free to proceed with their investigation, and take the deposition of "any and all witnesses" (excepting only Thal). Absent the existence of any constitutional protection, this argument fails to consider the prominent position which Thal has held as former chief executive officer of the debtor corporation, and the immeasurable assistance which he is potentially capable of rendering in furtherance of an equitable reorganization of the debtor corporations.

In addition, there is no assurance (and indeed a strong indication to the contrary), that if the protective order were granted to Thal, all of the other "insiders" would not then assert a similar right to protection, thereby effectively blocking the progress of the Section 167 investigation. Also, any extended delay would seriously hamper the trustees in prosecuting in a timely manner, any causes of action which may be available to the estate for recoupment of assets, by reason of the statute of limitations, 11 U.S.C. § 29.

In In re Mutual Security Savings & Loan Ass'n, Inc., 214 F.Supp. 877 (D.Md. 1963), it was stated that:

> The Court must not depart from the liberal respect of the privilege [against self incrimination] so well engrafted into American jurisprudence, but an improvident honoring of the privilege in derogation of the rights of the numerous creditors * * * is to be avoided.

We emphatically agree with this observation.

## ORDER

AND NOW this 11th day of July 1968, it is HEREBY ORDERED that the petitioner Morise Thal is directed to be sworn and to testify as a witness in such depositions as may be scheduled by the trustees of the debtor corporations pursuant to Section 167 of the Bankruptcy Act. This Order is without prejudice to or in derogation of the rights of the petitioner to exercise any Constitutional privilege, in accordance with this Opinion and Order, which he may have.

It is further ordered that the petitioner's countermotion for a protective order is denied.

---

16. See also United States v. Birrell, 276 F.Supp. 798, 810 (S.D.N.Y.1967), where a criminal defendant unsuccessfully sought to enjoin Chapter X trustees from examining and otherwise making use of records and documents pertaining to the debtor corporations. Civil suits had also been commenced by the trustees against the defendant.