269 F.Supp. 540 (1967)
The PHILADELPHIA HOUSING AUTHORITY, on behalf of itself and all others similarly situated
v.
AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.
LINDY BROS. BUILDERS, INC. OF PHILADELPHIA et al.
v.
AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.
Civ. A. Nos. 41773, 41774.
United States District Court E. D. Pennsylvania.
June 7, 1967.
*541 Harold E. Kohn, Philadelphia, Pa., for Philadelphia Housing Authority and other named plaintiffs.
David Berger, Philadelphia, Pa., for certain intervening plaintiffs.
Lewis H. Van Dusen, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER
JOHN W. LORD, Jr., District Judge.
These two suits are civil, treble damage, antitrust actions. Defendants are manufacturers of plumbing fixtures, together with their trade association. The Philadelphia Housing Authority case is a class action brought on behalf of various governmental bodies, such as school districts, cities and states. The Lindy Bros. Builders action is a class action on behalf of builders. The complaints allege that defendants have entered into price-fixing conspiracies violating the Sherman Act.
Defendants request a stay of all proceedings pending the termination of related criminal litigation in the United States District Court for the Western District of Pennsylvania, in Pittsburgh. All defendants join in the motion for the stay. The issues involved center around an apparent clash between the Congressional policy of encouraging enforcement of the antitrust laws by private civil litigants with the right to a fair trial afforded defendants in a criminal antitrust action. The request for a stay will be denied.
The present procedural posture of these cases can be briefly placed into perspective. The complaints were filed on December 21, 1966, after the indictment of the corporate defendants and certain of their officers under two criminal antitrust indictments (Crim. 66-295; 66-296) returned on October 6, 1966 in the Western District of Pennsylvania. The plaintiffs have quite candidly conceded that the subject matter of the present civil complaints closely parallels the subject matter of the indictments pending in the Western District.[1] Prior to the request for a stay in these proceedings, the defendants in the criminal action had filed motions to dismiss the indictments and to suppress key evidence.
The two civil actions pending before this court were designated protracted cases on April 4, 1967. Plaintiffs have already served interrogatories on defendants and have moved for the production of various documents. Numerous motions to intervene as party plaintiff have been filed. The defendants indicate that they will stipulate to these interventions, preserving their rights to plead various defenses. Defendant Crane Co. has requested the transfer of all cases from this district to the Western District, pursuant to 28 U.S.C.A. § 1404(a). See, e. g., Thomas v. Silver Creek Coal Co., 264 F.Supp. 833 (E.D.Pa.1967). Defendants Kilgore Ceramics and Georgia Sanitary have filed motions attacking venue in this district and seek dismissal. See generally, Timberlake, Federal Treble *542 Damage Antitrust Actions (1965) § 5.04. All of these matters have been held in abeyance pending determination of the motion to stay. In light of the denial of defendants' request for the stay, these matters will be considered by this court at the request of all interested parties.

DISCUSSION
It has not been questioned that it is within the ambit of this court's discretion to grant or refuse the request for a stay. Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). In Landis, Mr. Justice Cardozo pointed out that the party requesting a stay "* * * must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay * * * will work damage to someone else." Id. at 255, 57 S.Ct. at 166. Certainly any inequity faced by the defendants in these actions must be counter-balanced by the hardships and inequities facing plaintiffs if a broad stay of all proceedings were to be imposed.
At the outset, it becomes critical to note that the private treble damage action was designed by Congress to serve a dual purpose. Congress intended that those injured by antitrust violations recover their damages. In addition, the treble recovery mechanism was "* * intended to use private self-interest as a means of enforcement * * *" of the antitrust laws. Bruce's Juices v. American Can Co., 330 U.S. 743, 751, 67 S.Ct. 1015, 1019, 91 L.Ed. 1219 (1947). Accord, Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 318, 85 S.Ct. 1473, 1476, 14 L.Ed.2d 405 (1965), where the Supreme Court commented: "Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws." See, generally, Report of the Attorney General's National Committee to Study the Antitrust Laws (1956) 378, and, Timberlake, supra., § 3.01. From the specific enforcement role given the private treble damage plaintiff by Congress, it is easy to discern a Congressional interest in the expedited trials of such actions. It would be anomalous to conclude otherwise. The antitrust laws, themselves, function as the Congressional blueprint designed to keep the American economy operating within the free enterprise guidelines mapped out under these statutes. Any threat to the free enterprise footings of our national economic superstructure, constitutes, in Congress' judgment, an immediate and serious threat to our national welfare. The strong incentive of triple recovery encourages private litigants to vigorously enforce the antitrust laws. Against this backdrop, unwarranted stays of proceedings stymie and offset any incentive otherwise contained in the possibility of triple recovery. Delay tends to discourage prosecution of civil litigation. As time passes, memories of witnesses fade. The inherent value of a claim for damages, enhanced by potential triple recovery, diminishes.[2]
Defendants have outlined two principal arguments in support of their motion for a stay. Initially, defendants contend that a stay of these proceedings, pending the outcome of the criminal actions in the Western District, is necessary to avoid prejudicing their right to a fair trial in the criminal action by a premature disclosure of their defense, or a possible violation of their privilege against self-incrimination. Defendants also maintain that the stay is necessary to avoid the burden of responding to the extensive discovery proposed by plaintiffs, especially when such discovery may hamper the preparation of an adequate defense in the criminal trial, and when much of the discovery may be rendered unnecessary after the trial of the criminal actions. Each of these contentions merits separate discussion.
Defendants have strenuously argued that unless a stay were entered, it would *543 be impossible for them to obtain a fair trial in the criminal actions underway in Pittsburgh. To bolster their argument, defendants have placed pivotal reliance on the district court decision in United States v. Simon, 262 F.Supp. 64 (S.D. N.Y.1966).[3] Defendants argue that the Simon decision stands for the proposition that even if individual criminal defendants do not wish to assert their privilege against self-incrimination, the narrow discovery principles of the Federal Rules of Criminal Procedure will act as a bar to discovery, in a related civil action. Urging the soundness of such a result, the defendants argue that a stay of all proceedings will guarantee that their privileges, as outlined in Simon, will be protected. Defendants' reliance on Simon is misplaced.
The district court judge trying the criminal action in Simon issued an injunction blocking civil depositions of the individual defendants in a related civil action, where these same defendants were also being sued.[4] The subject matter of both the criminal indictment and civil complaint was identical, stemming from the same alleged corporate fraud. The defendants were certified public accountants who did not want to assert their privilege against self-incrimination because of the resulting stigma upon their professional conduct. The district court enjoined the civil discovery during the pendency of the criminal litigation, summarizing the relevant authorities in the following fashion:
The problem is by no means novel. It has been consistently held that where both civil and criminal proceedings arise out of the same or related transactions an objecting party is generally entitled to a stay of discovery in the civil action until disposition of the criminal matter. This has been true whether the defendant in the criminal case seeks to use the civil rules to obtain disclosure of the Government's evidence [citing Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962) and analogous cases], or whether the Government seeks a similar advantage to secure evidence not otherwise available to the prosecution. [citing cases.] 262 F.Supp. at 74.
The Second Circuit based its reversal on the fact that the two lines of cases outlined in the above excerpt were distinguishable. The Second Circuit placed the cases into two categories.
The first category involved situations where the government seeked to block disclosure of its criminal investigation through discovery in a related civil action brought against the government by the criminal defendant. Campbell v. Eastland, supra., is typical of this first category. In Campbell, the Fifth Circuit would not allow a criminal defendant to side-step the narrow discovery rules applicable to the criminal action through the vehicle of a simultaneous civil action designed to obtain discovery of the government's criminal investigation reports, then in the hands of the United States Attorney. One of the primary reasons for the injunction in Campbell was that once the defendant obtained a preview of the government's case, he could then be expected to block any reciprocal discovery by the government by asserting his Fifth Amendment privilege against self-incrimination. 307 F.2d at 487.
*544 However, the Second Circuit concluded, in Simon, that those cases in the second category indicate that the criminal defendant himself may seek to enjoin discovery in related civil litigation, when such requests "* * * rest upon the deponent's assertion of his privilege against self-incrimination." 373 F.2d at 654. The reversal in Simon, based upon this distinction, appears proper and in full accord with the protections afforded the parties under the Federal Rules of Criminal Procedure. The government is afforded insulation from premature disclosure of its case, absent a mutual discovery situation, while the individual defendant is afforded the full and thorough protections of his Fifth Amendment privilege against self-incrimination. Such a result is in full keeping with the criminal procedure rules.[5]
Denial of a stay of proceedings at this juncture does not pose a serious threat in undermining anyone's privilege against self-incrimination. The defendant corporations and trade association are not afforded the privilege, nor can they refuse to make discovery in these civil actions on the basis of such a claim.[6] Furthermore, because of the insulation afforded individuals under the Immunity Act (15 U.S.C.A. § 32) plaintiffs may quite properly obtain discovery from defendants' employees who have testified before the grand jury.[7] As to the individual defendants, they will be afforded the full protections of their privilege against self-incrimination.
Defendants contend that the stay of these proceedings is necessary to afford them a full and adequate opportunity to concentrate on the preparation of their defenses to the criminal actions in the Western District. It is interesting to note that in the Simon case, the district court (in the criminal action) refused to enjoin any civil discovery involving the defendants' accounting firm, concluding that the "* * * criminal defendants have ample legal manpower at their disposal * * * [and there] is no likelihood that the defendants' preparation for trial will be unduly hampered * * *." 262 F.Supp. at 78. The fears of the present defendants, of oppression and harassment while at the mercy of plaintiffs' discovery, are unfounded. The criminal actions in the Western District are not on the eve of trial. The defendants have not made any demonstration of oppressive burden at this time that would warrant a stay of all proceedings. If, in the future, the criminal action approaches an involved stage and the plaintiffs' discovery, pending at that time, reaches such proportions *545 as to seriously interfere with the defense of the criminal actions, application can readily be made to this court for appropriate relief, such as a short term protective order.[8]
In conclusion, the above discussion briefly touches upon some of the factors which have affected this court's determination not to grant the stay. After a careful consideration of the briefs and points raised in argument on the motion, it is the opinion of this court that a stay of all proceedings at this juncture is unwarranted, especially in view of this court's concern to expedite the progress of these civil, treble damage, antitrust actions.
Defendants' motion requesting a stay of all proceedings denied.
And it is so ordered.
NOTES
[1] Plaintiffs have stated in their "MOTION TO CONSOLIDATE" that:

"Except for the identity of the plaintiffs and the classes they represent, the allegations of both complaints are the same, being based on the allegations in the government litigation of national price-fixing conspiracies with respect to plumbing fixtures." (Doc. 17 in C.A. 41773; Doc. 15 in C.A. 41774).
[2] See generally, C. A. Bane, "Pretrial Discovery in Multiple Litigation From the Plaintiff's Standpoint", 32 A.B.A. Antitrust L.J. (1966) 117, 129.
[3] Rev'd, 373 F.2d 649 (2nd Cir. 1967), execution and enforcement of the reversal stayed by Mr. Justice Harlan on March 13, 1967; cert. granted sub nom. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591 (1967).
[4] In Simon, the judge sitting in the civil action refused to grant the defendants' request for a stay of all discovery pending the termination of the criminal suit. Instead, the defendants were ordered to attend the civil depositions and assert their privilege against self-incrimination, where warranted. If a stay of proceedings had been entered in the civil suit, no civil discovery motion would be entertained during the pendency of the blanket stay. See, Evans v. Hudson Coal Co., 84 F.Supp. 740 (M.D.Pa.1949). See, generally, 2A Barron & Holtzoff, Federal Practice and Procedure § 800.
[5] The Federal Rules of Criminal Procedure, in Rule 16(c), provide the government an opportunity for discovery if the defendant wishes to make use of the liberal discovery mechanism of Rule 16. An interesting application was made in an antitrust context, by the Advisory Committee, in the Committee Note accompanying the adopted amendments to Rule 16(c), which apparently bolsters the position adopted by the Second Circuit in Simon. The Committee stated:

This subdivision [subsection (c) of Rule 16] permits the court to condition its disclosure order by requiring the defendant to permit the government to inspect items which he intends to produce at trial and which are within his possession, custody or control. While the government normally has resources adequate to secure the information necessary for trial, there are some situations in which mutual disclosure would appear necessary to prevent the defendant from obtaining unfair advantage. For example, * * * in cases (such as antitrust cases) in which the defendant is well represented and well financed, mutual disclosure so far as consistent with the privilege against self-incrimination would seem appropriate as in civil cases. [emphasis supplied.] 8 Moore's Federal Practice (2d ed. 1966) ¶ 16.07 [2]; 39 F.R.D. 177 (1966). See generally, "Discovery in Federal Criminal Cases", 33 F.R.D. 47 (1963).
[6] United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); United States v. Forty-Two Jars, 264 F.2d 666 (3rd Cir. 1959).
[7] See, United States v. Welden, 377 U.S. 95, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964); Rutherford v. United States, 365 F.2d 353 (9th Cir. 1966).
[8] The defendants have called the court's attention to Judge Anthony T. Augelli's ruling in Borda v. American Oil Co., (C. A. No. 947-66, U.S. District Court for the District of New Jersey) where he granted a stay in the civil private antitrust action pending termination of the criminal action in Newark. This court is in complete accord with Judge Augelli's conclusion that the granting of the stay is "* * * a matter resting in the sound discretion of the Court."