GOLDEN QUALITY ICE CREAM CO., INC.

v.

DEERFIELD SPECIALTY PAPERS, INC. et al.

GOLDENBERG CANDY CO., INC.

v.

DEERFIELD SPECIALTY PAPERS, INC. et al.

COMMERCIAL CARD & PAPER CO., INC.

v.

DEERFIELD SPECIALTY PAPERS, INC. et al.

EAST SIDE FOODS, INC.

v.

DEERFIELD SPECIALTY PAPERS, INC. et al.

SALSBURG MEATS, INC.

v.

DEERFIELD SPECIALTY PAPERS, INC. et al.

GENERAL SUPPLY & PAPER CO.

v.

DEERFIELD SPECIALTY PAPERS, INC. et al.

ANCHOR PAPER CO., INC.

v.

DEERFIELD SPECIALTY PAPERS, INC. et al.

Civ. A. Nos. 80–891, 80–914, 80–919, 80–940, 80–956, 80–968 and 80–1128.

United States District Court, E. D. Pennsylvania.

April 30, 1980.

54

Arnold Levin, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for plaintiff, Salsburg Meats, Inc.

Aaron M. Fine, Philadelphia, Pa., for plaintiff, Anchor Paper Co., Inc.

Warren Rubin, Gross & Sklar, Philadelphia, Pa., for plaintiff, Commercial Card & Paper Co.

David Berger, Philadelphia, Pa., for plaintiffs, Golden Quality Ice Cream Co., Gen. Supply & Paper Co.

Harvey S. Kronfeld, Rawle & Henderson, Philadelphia, Pa., for plaintiff, Goldenberg Candy Co.

Harold E. Kohn, Kohn, Savett, Marion & Graf, Philadelphia, Pa., for plaintiff, East Side Foods, Inc.

Samuel E. Dennis, Philadelphia, Pa., for Westfield River Paper Co., Inc.

Ralph W. Brenner, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for St. Regis Paper Co.

Oliver C. Biddle, Philadelphia, Pa., for Riegel Products Corp.

Arthur H. Kahn, Philadelphia, Pa., for Deerfield Specialty Papers, Inc.

John G. Harkins, Jr., Philadelphia, Pa., for Philip Morris Industrial Inc.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On February 28, 1980, the grand jury returned an indictment charging five corporations and several individuals with criminal violations of the antitrust law in a case denominated *United States v. Deerfield Specialty Papers, Inc., et al.,* 501 F.Supp. 796 (E.D.Pa.1980). The case was assigned to Judge Hannum. On the heels of that indictment, on March 3, 1980, the first of seven civil actions, each directed against the five corporate defendants in the criminal case, was filed in this court. All of these cases have been assigned to me, as related cases within the meaning of Local Rule 3(d). The Hon. William F. Hall, Jr., United States Magistrate, has kindly agreed to preside over the pre-trial phases of this litigation, consulting with me as the occasion arises.

Plaintiffs in these cases have filed sundry papers, including motions to consolidate, motions for class certification, interrogatory and document requests, and a lengthy proposal for a Pretrial Order No. 1. Defendants, in turn, have moved for a stay of all proceedings in the civil cases pending the completion of the criminal trial.

On April 9, 1980, Judge Hall and I heard oral argument:

Defendants argued that (1) the burden of civil discovery and motion practice would seriously hamper them in their preparations for the criminal proceeding, and (2) civil discovery would pose the danger of intruding on the Fifth Amendment rights of the several individuals who are defendants in the criminal (albeit not in the civil) proceeding.

Plaintiffs responded that (1) defendants' concerns were largely unfounded, and (2) defendants' valid concerns, in any event, could be met by prophylactic measures considerably less drastic than a blanket stay.

Judge Hall and I also heard arguments from those who are parties to the criminal proceedings but not to the civil proceedings. Three of the individual defendants in the criminal case were represented at argument and endorsed the defendants' motion for a stay. The Government asserts that it sees itself as having no interest of its own in a blanket stay of these civil proceedings and therefore adopted a neutral position. The Government did object, however, to a number of provisions in plaintiffs' proposed Pretrial Order No. 1, which it felt were incompatible with the Government's obligation to protect the grand jury process.

### I.

■ At the outset, I should make clear that I find no basis in law for the notion that defendants in a criminal prosecution, antitrust or otherwise, have a due process right to stay proceedings in related civil actions lest they be forced to defend themselves on two legal fronts simultaneously. To the extent that defendants' motion, implicitly or explicitly, carries such constitutional overtones, it must be rejected. The substantial jurisprudence that has developed concerning the circumstances in which a stay of civil proceedings is appropriate is but an off-shoot of the inherent authority of the court to control its workload efficiently. As Mr. Justice Cardozo observed,

> the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance.

*Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936).

The memoranda and oral arguments have helped Judge Hall and me identify the principal competing interests which, in the present setting, must be accounted for in the balance we reach. Our canvass of competing interests is not intended to be exhaustive. It is intended to describe broadly the terrain within which we think the exercise of discretionary judgment is called for. Of course, it is in the nature of such a discretionary judgment that the same set of

facts may evoke contrary responses—but responses which are nonetheless equally warranted in law—from different judges. These preliminary observations are illustrated by the cases that have come to our attention on the issue before us. *Compare Amity Plumbing & Heating v. Rheem Manufacturing Co.*, C.A. No. 79–1519 (E.D.Pa. June 4, 1979); *Air-Wize Inc. v. Rheem Manufacturing Co.*, C.A. No. 79–470 (E.D.Pa. February 12, 1979); *Texaco v. Borda*, 383 F.2d 607 (3d Cir. 1967); and *Chronicle Publ. Co. v. NBC*, 294 F.2d 744 (9th Cir. 1961) (all involving blanket stays of civil antitrust proceedings pending disposition of criminal or regulatory proceedings) *with In re Electric Weld Steel Tubing Antitrust Litigation*, C.A. No. 79–4628 (E.D.Pa. February 28, 1980); *In re Independent Gasoline Antitrust Litigation*, M.D.L. 267 (D.Md. July 19, 1977); *In re Folding Cartons Antitrust Litigation*, M.D.L. 250 (N.D.Ill. July 2, 1976); *In re Small Bags Antitrust Litigation*, C.A. No. 76–3407 (E.D.Pa. December 21, 1979); *In re Gas Meters Antitrust Litigation*, M.D.L. 360 (E.D.Pa.); and *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 269 F.Supp. 540 (E.D.Pa.1967) (all denying blanket stays in civil antitrust proceedings).

■ Broadly stated, in terms of the problems presented by this litigation, the principal factors are five-fold: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

### (1) *Plaintiffs' interest and potential prejudice.*

Any plaintiff in the federal courts enjoys the right to pursue his case and to vindicate his claim expeditiously. No claimant is presumed to enter a civil case fully prepared for trial or fully aware of the issues which may later develop. It is only through the discovery procedure that a plaintiff can determine the merit (or lack of merit) in his case and develop the strategy which will guide him throughout the litigation. Indeed, it is only through early discovery that later discovery may be suggested. In the current instance, however, there is a real possibility that a disposition favorable to the Government in the overlapping criminal prosecution will obviate much of the expenditure of time and dollars which plaintiffs would otherwise be compelled to invest in their civil suits. Judge Hannum has set November 3, 1980 as the commencement of the criminal trial—and, given the strictures of the Speedy Trial Act, that trial date can presumably be taken as reasonably firm. Thus, in the context of the expectably extended calendar of typical multi-party civil antitrust litigation, there is little danger that a halt to the proceedings in this litigation until the end of the criminal trial would result in oppressive delay.

### (2) *Burden on Defendants*

Defendants are confronted with the necessity of developing a defense to complex criminal charges. They face the possibility of substantial penalties in that criminal action. The preparation of a defense will impose upon both the corporate and individual defendants, and their counsel, substantial burdens. Intensive discovery at this time in the civil cases will divert valuable resources from the defense of the criminal action. We may assume a certain elasticity in the capacity of the various law firms to adjust to the needs of both litigations. But broad discovery at this time is likely to spread thin the time of certain key individuals in each of the defendant corporations who, besides conducting their normal managerial responsibilities, must at this time be preoccupied with providing essential information to those attempting to mount a defense to the criminal charges. It is the nature of their positions that these persons will also be the principal conduits of infor-

mation by which the corporations will be able to respond to civil discovery.

■ Defendants also appear to be concerned that materials unearthed during civil discovery may eventually inure to the benefit of the Government in the prosecution of the criminal action. This concern is of doubtful relevance to the civil proceedings. Of course, plaintiffs have no right to use civil discovery as a pretext for gathering information useful for the criminal cases, any more than defendants do. Cf. *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963) (staying civil discovery against Government, to prevent defendants in criminal cases from using civil process to discover Government's criminal case). But as Judge Hastie observed, there is

> no rule or equitable principle [that we know of] that protects a defendant in a pending criminal prosecution from the disclosure, by another person in a separate civil action, of evidence which may later become a part of the prosecution's case against him.

*United States v. American Radiator & Standard Sanitary Corp.*, 388 F.2d 201, 204 (3d Cir. 1969). While any action which delays discovery in the civil case might have the incidental effect of limiting the Government's fortuitous access to information arguably relevant in the criminal case, this is not a factor which should or will influence the decision whether to grant a stay. See also *DeVita v. Sills*, 422 F.2d 1172–81 (3d Cir. 1970).

(3) *The burden on the court*

As noted earlier, the question with which we are here concerned is tied most directly to the court's responsibility "to control the disposition of the cases on its docket with economy of time and effort" for all actors in the litigation, including the court itself. *Landis v. North American Co., supra.* The court's ability to deal speedily with those questions of law and fact that will assuredly be presented in the pre-trial phases of this litigation depends in substantial meas-ure on the competing pressures from other cases on the docket. And—now as always—those other pressures are not insubstantial. Of greater significance is the fact that the pendency before two judges in this district of cases which overlap in a significant way presents the likelihood of at least some duplicative judicial effort. Here, that duplication would be the consequence of the fact that the two cases are being fought, one in the criminal, one in the civil, arena. But if the Government succeeds in the prosecution of the criminal case, the parties and this court will very likely be relieved of the burden attendant upon plaintiffs' need to prove antitrust liability. It is not necessary to speculate about whether the Government is likely to prevail in the criminal case. The mere possibility that a substantial amount of the court's work, if undertaken now, may shortly prove to have been unnecessary, cautions against undue haste in proceeding with this civil action. The significance of judicial economy in the balance we reach has been most forcefully expressed by the Ninth Circuit:

> We are then confronted with the prospect of two tremendously complex proceedings simultaneously assembling the same factual data in painstaking detail for the purpose of considering these facts from different points of view. The situation is one which cries out for the elimination of wasteful duplication of effort. If the mechanics of justice are not to be wholly overwhelmed by the steadily increasing burden of complex antitrust litigation, means must be found for easing that burden. The elimination of unnecessary duplication does not appear unreasonable under these circumstances. To hold otherwise might well, as a practical matter, defeat the very end sought. Instead of hastening the court's determination in this particular case, such a rule of practice may result in delay in this and other protracted cases solely by virtue of calendar congestion. The burden of such duplication of effort is not, of course, borne by the courts alone. It is borne as well by the litigants and their counsel.

*Chronicle Publ. Co. v. NBC*, 294 F.2d at 747–48. Moreover, whatever the outcome of the criminal case, its termination can be expected to remove the predicate for the assertion of the Fifth Amendment right against self-incrimination by potential deponents; and this should allow civil discovery to proceed more smoothly than would otherwise be possible.

(4) *Burden on non-parties*

■ As pointed out above, the pressures of civil discovery are likely to weigh most heavily on certain key managerial officials in defendant companies. Although corporate defendants have no Fifth Amendment right to refuse to respond to civil discovery, corporations speak only through their officers and other upper-level managers. Among the senior management of the corporations defending these civil cases are persons who, together with their corporate employers, face criminal charges, and so it may be anticipated that some of these persons will have Fifth Amendment rights to be reckoned with. The dilemma for such persons is severe—because they face serious penalties in the event of a criminal conviction, and because they are not themselves parties to this civil action.

Although the court might attempt to restrict dissemination of information gained through civil discovery through the mechanism of a protective order, the possibility of inadvertent disclosure, notwithstanding the good faith of the many law firms that would be privy to civil discovery, is not insubstantial. Accordingly, Judge Hall and I view this burden upon third parties as a factor to be given real weight.

(5) *The Public Interest*

The plaintiffs have laid particular stress upon the public interest in having private antitrust actions proceed expeditiously. Relying heavily on the denial of a stay by the late Judge John W. Lord, Jr., in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 269 F.Supp. 540 (E.D.Pa.1967), plaintiffs point out that the existence of the private treble-damage remedy in antitrust law represents a congressional determination that such actions are necessary to enforce the public interest crystallized in the antitrust laws. The argument is clearly correct in its general thesis. But it is equally obvious that the public interest in the vigorous prosecution of private antitrust claims must be less acute where, as here, the United States has decided to devote a part of its prosecutorial resources to bringing a criminal action. This is not to suggest that Congress has, in any way, retreated from its original determination that the private treble-damage action is a necessary part of the antitrust enforcement process. Nor is it to make an assessment of the relative resources that private, as opposed to public, antitrust plaintiffs may be able to marshal in such a litigation. But the decision to prosecute a criminal antitrust case does represent a conscious determination by those entrusted with prosecutorial discretion that the public interest will be served by such a proceeding. In those circumstances, there does not seem to be the same pressure to expedite the private treble-damage action—at least pending the disposition of the criminal trial.

These considerations, of course, do not militate against proceeding with that part of the civil case which would be neither duplicative of, nor intrusive with respect to, the criminal case. Federal Rule of Civil Procedure 23(c), for example, provides for a determination of the appropriateness of a class action "as soon as practicable after the commencement of an action." Provided that proceeding with such a motion did not overflow into discovery on the merits, there is no clear reason why such a determination should not proceed expeditiously.

II.

■ After consideration of the foregoing factors, I have concluded that the defendants' motion for a complete stay of all civil proceedings, pending disposition of the criminal charges, should be denied. Plaintiffs have filed civil actions and they are entitled to begin to educate themselves about the factual circumstances surrounding those actions. On the other hand, I will

not authorize unfettered discovery between now and the criminal trial. The plaintiffs' discovery scenario will be tempered by those of the defendants' concerns which I deem substantial and hence warranting the application of sensible prophylactic measures. To this end, I will allow plaintiffs limited discovery, permit them to raise preliminary questions of law and fact, and then suspend proceedings as the time for the criminal trial draws near.

Although plaintiffs have filed various document requests, at oral argument they chose to narrow their initial requests considerably. All they now seek are copies of all those documents in defendants' possession that were turned over to the grand jury investigating the alleged criminal violations. Since the documents in question have already been identified and sorted, compliance with this request should impose only a minimal burden upon the defendants. Furthermore, discovery of these documents poses no Fifth Amendment threat to the individual criminal defendants, and it is not otherwise significantly onerous as to them. Nor is disclosure of these documents prohibited by Federal Rule of Criminal Procedure 6(e). Insistence that disclosure must turn on a showing of particularized need would be warranted if what was at issue was the disclosure of grand jury transcripts (*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Illinois v. Sarbaugh*, 552 F.2d 768 (7th Cir. 1977), *cert. denied sub nom. J. L. Simmons Co., Inc. v. Illinois*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *Petrol Stops Northwest v. United States*, 571 F.2d 1127 (9th Cir. 1978), *rev'd sub nom.*

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)); [1] but where, as here, the grand jury has completed its work and all that is sought are those documents turned over to the grand jury by the corporations which are defendants in the civil case, the considerations referred to in *Douglas Oil* as militating against disclosure are beside the point.[2] Significantly, the Government has voiced no objection to this form of discovery, although it would object to the disclosure of grand jury transcripts. Finally, ordering discovery of these documents seems to accord with prevailing practice. See, e. g., *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 41 F.R.D. 518 (E.D.Pa.1967); *In re Eastern Sugar Antitrust Litigation*, M.D.L. 201 (E.D.Pa. November 8, 1976); *Virginia Do-Nuts, Inc. v. Continental Group, Inc.*, C.A. No. 76–3407 (E.D.Pa. December 21, 1976); *In re Corrugated Container Antitrust Litigation*, M.D.L. 310 (S.D.Tex. April 14, 1978). But see *In re Electric Weld Steel Tubing Antitrust Litigation*, C.A. No. 79–4628 (E.D.Pa. February 28, 1980). Accordingly, I will order defendants to turn over the documents specified by plaintiffs in their proposed Pretrial Order No. 1.

Plaintiffs also wish to ·move forward promptly on the class certification issue. In seeking expedition here, they écho the "as soon as practicable" mood of Federal Rules of Civil Procedure 23(c). Plaintiffs have indicated an expectation that the certification issue will prove resolvable on the basis of uncontroverted facts and through the application of relatively settled principles of law. Whether this expectation will be vindicated, I venture no guess. However, it

---

**1.** Plaintiffs initially sought grand jury transcripts, but this demand was withdrawn at the oral argument on April 9.

**2.** The *Douglas* court summarized these reasons as follows:

First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before

the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but found innocent by the grand jury will not be held up to public ridicule. 99 S.Ct. at 1673.

seems appropriate that the plaintiffs be allowed to pursue the issue at least to the point of requiring the submission of replies by defendants. Indeed, it is hoped that such early submissions, and such additional submissions as might be made before the commencement of the criminal trial, will give the court a leg up on this first order of business, even if it turns out that the certification issue cannot be satisfactorily resolved until the conclusion of the criminal case.

Finally, Judge Hall and I plan to suspend all proceedings by the parties in this case as of August 30, 1980, in order to allow defendants an unobstructed period of two months in which to prepare their defense against the criminal charges. Before that time, but not later than June 30, 1980, I will entertain such additional motions, and requests for further discovery, as plaintiffs may choose to submit.

Orders will be issued accordingly.