**In re RESIDENTIAL DOORS ANTITRUST LITIGATION.**

**This Document Relates to All Cases.**

**Master File No. 94–CV–3744.**
**MDL Docket No. 1039.**

United States District Court,
E.D. Pennsylvania.

Sept. 18, 1995.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Harold E. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Steven A. Asher, Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, PA, for Lumco Industries, Inc.

Gary M. Marek, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, and Margaret M. Zwisler, Washington, DC, for Premdor Corporation.

Richard L. Bazelon, Bazelon & Less, Philadelphia, PA, Daniel A. Rezneck, Arnold and Porter, Washington, DC, for Steves & Sons, Inc.

William H. Roberts, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Ledco, Inc.

## *MEMORANDUM*

RAYMOND J. BRODERICK, District Judge.

Pending before the Court are several motions related to discovery in these consolidated class action proceedings. Defendant Premdor Corporation ("Premdor") has filed a motion pursuant to Fed.R.Civ.P. 26(c), which Defendants Steves & Sons, Inc. ("Steves") and Ledco, Inc. ("Ledco") have joined, requesting a protective order staying certain discovery proceedings. Defendants seek to stay this discovery until any criminal proceedings arising out of a related federal antitrust investigation are complete "or until such time as the employees, agents and officers of the defendants are no longer at risk of criminal prosecution." Plaintiffs oppose Defendants' motion for a protective order, and have also filed a motion pursuant to Fed.R.Civ.P. 37 seeking to compel Defendants to respond to interrogatories seeking information about communications between Defendants and their competitors related to pricing and other business activities. Defendants have opposed Plaintiffs' motion to compel, maintaining that they have answered Plaintiffs' interrogatories to the extent possible at this time and cannot compel their employees with personal knowledge of the facts to provide any additional information in light of the federal criminal investigation.

On August 11, 1995, Defendant Premdor filed an additional motion for a protective order seeking to stay certain class certification deposition discovery by Plaintiffs, contending that Plaintiffs are attempting to engage in the further discovery proceedings that Defendants have sought to stay through the earlier motions. Defendant Steves has filed a motion renewing its earlier motion for a protective order and incorporating Premdor's August 11, 1995 motion, and Defendant Ledco, Inc. ("Ledco") has filed a similar motion incorporating Premdor's August 11, 1995

motion. Plaintiffs have filed a response opposing any such protective orders.

For reasons discussed below, Defendants' motions for protective orders will be denied. In addition, Plaintiffs' motion to compel Defendants to answer interrogatories and respond to requests for production of documents will be granted.

## I. Background

### A. *Prior Proceedings*

In the civil actions presently before the Court, Plaintiffs allege that the Defendants, who are manufacturers of residential flush doors, engaged in conspiratorial activity to raise, maintain, stabilize, and fix prices of residential flush doors throughout the United States. Plaintiffs and members of the class they seek to represent are purchasers of residential flush doors, and filed these actions after each defendant entered guilty pleas to one-count informations charging each defendant with violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

Two of the actions, *Lumco Industries v. Premdor Corp*, Civil Action No. 2:94–3744, and *Dubell Lumber Co. v. Premdor Corp., et al.*, Civil Action No. 2:94–4174, were originally filed in the Eastern District of Pennsylvania. On December 1, 1994, the Judicial Panel on Multidistrict Litigation transferred two actions from the Middle District of Florida to this Court for coordination and consolidation of pretrial proceedings: *Norwood Sash & Door Mfg. Co. v. Premdor Corp., et al.*, Civil Action No. 8:94–975, and *Tonka Building Supplies, Inc. v. Premdor Corp., et al.*, Civil Action No. 8:94–1127. Another action, *Derr Lumber & Millwork Co. v. Premdor Corp., et al.*, Civil Action No. 2:95–2078, was filed in the Eastern District of Pennsylvania on April 10, 1995.

In the criminal proceedings charging each defendant with violating the Sherman Act, the United States filed a separate information against each defendant and did not identify any co-conspirators. Each defendant subsequently entered into a separate plea agreement. Defendant Premdor was sentenced by the Honorable Susan C. Bucklew, United States District Judge, Middle District of Florida, on June 22, 1994, and Defendant

Steves was sentenced by Judge Bucklew on July 1, 1994. In conjunction with pleas of guilty to one count of price fixing, Defendant Premdor paid a fine of $6,000,000.00, and Defendant Steves paid a fine of $650,000.00. Defendant Ledco was sentenced by the Honorable Elizabeth A. Kovachevich, United States District Judge, Middle District of Florida, on January 30, 1995 and paid a fine of $250,000.00.

In its plea agreement with the United States, Defendant Premdor agreed to the following:

7. *Factual Basis*

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those facts beyond a reasonable doubt:

### A. *FACTS*

The defendant is a major producer of residential flush doors made and sold in the United States. The defendant and others engaged in a conspiracy to fix, raise, and maintain the prices charged to certain U.S. customers for residential flush doors, in unreasonable restraint of trade in violation of the Sherman Antitrust Act. As a result of the conspiracy, from at least as early as January 1993 through at least December 1993, prices for residential flush doors sold to certain U.S. customers were fixed, raised and maintained. The business activities of the defendant and co-conspirators that are the subject of this information were within the flow of, and substantially affected, interstate commerce.

The plea agreements entered into by the other Defendants and the United States include similar certifications of facts. Each plea agreement also includes similar sections regarding cooperation and immunity for its officers, agents, and employees. For example, the plea agreement between Premdor and the United States includes the following sections:

5. *Cooperation*

The Defendant (including its parent, affiliates and subsidiaries) agrees to cooperate

fully with the United States in the conduct of any federal grand jury or other federal criminal investigation of antitrust violations in the residential flush door industry, and in litigation arising from such investigations. This cooperation shall include, but is not limited to, defendant's using its best efforts to secure the full and candid cooperation of all of its present or former officers, agents and employees who may have knowledge or information that might be of assistance to any federal grand jury or other criminal investigation of antitrust violations in the residential flush door industry, and providing the United States with all requested documents and physical evidence in its possession, custody or control.

6. *Individuals Who May Qualify for Immunity*

The United States agrees that each present officer, agent or employee of Premdor Inc. (other than its current President and Chief Executive Officer), its affiliates, or subsidiaries, who may have knowledge that might be of assistance to any federal grand jury or other federal criminal investigation of antitrust violations in the residential flush door industry may, within 60 days from the date of entry of the plea, unless extended by the United States in writing, provide the Antitrust Division with all information in his or her possession which might assist the grand jury investigation and not attempt to protect any person or entity by giving false information or by omission, and not falsely implicate any person or entity. If, in the judgment of the staff, the individual is fully honest, candid and truthful, the attorneys will, at their option, either request authority from the Assistant Attorney General in charge of the Antitrust Division to obtain a court order compelling the testimony of such officer, agent or employee before an appropriate grand jury pursuant to 18 U.S.C. § 6001 *et seq.*, or inform the officer, agent or employee in writing that he or she will not be prosecuted based on the information provided or information derived therefrom. In any testimony before the grand jury pursuant to 18 U.S.C. § 6001, such officer, agent or employee shall be granted

an opportunity to testify concerning the information provided to the Antitrust Division. The determination whether the individual has been fully honest, candid and truthful may be made after the investigation has been completed and is conditioned on a determination that the information provided was fully truthful and complete on all material points. If the individual has not been fully honest, candid and truthful, he or she will not be entitled to any non-prosecution agreement or immunity of any kind under this plea agreement. In that event, the United States agrees only that no statement made by the individual will be used directly against that individual in any proceeding arising out of this investigation, except to impeach his or her testimony, or in a prosecution for making a false statement. The Antitrust Division is free to use leads derived from information provided by the individual to pursue its investigation and any subsequent prosecution of that individual or others. In no event will any agent, officer or employee receive immunity from charges of perjury, obstruction of justice, or making a false statement in connection with this investigation after the date of the agreement.

Prior to the transfer of actions by the Judicial Panel on Multidistrict Litigation, this Court entered an Order consolidating actions in the Eastern District of Pennsylvania and establishing various pretrial procedures. This Court also entered an Order approving a schedule agreed upon by the parties for discovery. Following transfer of the Florida actions, this Court entered an Order approving an updated discovery and briefing schedule agreed upon by the parties. Notably, both the original and updated discovery and briefing scheduling agreed upon by the parties provided for extensive "merits" discovery while "class" discovery was also proceeding. The parties are in agreement that Defendants have produced over 100,000 documents in the course of discovery and identified numerous individuals who possess relevant information for possible deposition.

B. *Defendants' Motion for a Protective Order and Plaintiffs' Motion to Compel*

Plaintiffs submitted the following interrogatories numbered 10, 11, and 12 to Defendants Premdor and Steves:

10. State whether any of your officers or employees entered into any understanding, agreement, plan or scheme, express or implied, formal or informal, with any other person or any other residential door manufacturer, marketer, distributor, or supplier, concerning residential flush doors pertaining to prices, published prices, quoted prices, prevailing prices, discounts, future business, bids, territories, customers, allocation of business, discontinuation of any type or category of doors or other competitive activity. If the answer is affirmative, state separately as to each understanding, agreement, plan or scheme:

(a) the identify of each such officer or employee;

(b) the identity of each person with whom it was made;

(c) when it was entered into;

(d) where it was entered into;

(e) its terms;

(f) the identity of each document constituting, referring or relating thereto.

11. Did any of your officers or employees agree with any officer or employee of any other defendant or any other residential flush doors manufacturer, distributor, marketer or supplier to stagger the issuance of price sheets or bulletins relating to residential flush doors? If so, state:

(a) the identity of your officer or employee;

(b) the identity of any other person involved;

(c) when such agreement was made;

(d) the substance of the agreement;

(e) identify each price sheet or bulletin that was issued to such agreement;

(f) identify any other documents referring or relating in any way to said agreement or agreements.

12. Identify each of your officers or employees who was present at any meeting with competitors pertaining to prices, pricing of doors, customers, bids to customers, or territories, and, as to each:

(a) identify the meeting;

(b) identify the person or persons who initiated, called or organized the meeting;

(c) describe every action taken by you as a result of the meeting.

In a supplemental response to interrogatory No. 10, Defendant Premdor asserted that it had previously identified its officers and employees engaged in the sales and marketing of residential doors and referred Plaintiffs to customer files, apparently already released through discovery, which purportedly contain pricing agreements between Premdor and its customers. In response to interrogatory No. 11, Premdor contended that the interrogatory was "unduly burdensome and duplicative" in light of the other interrogatories, but that, to the best that it understands the interrogatory, its answer was "no." In response to interrogatory No. 12, in addition to an objection based upon the purported burdensome nature of the interrogatory, Premdor asserted that its employees "may" have met employees or representatives of other residential door manufacturers, but that "most" such meetings would not be responsive to Plaintiffs' request.

In response to interrogatories No. 10 and No. 12, Premdor also stated as follows:

As already disclosed, Premdor also entered a Plea Agreement with the United States Department of Justice which recites each of the facts admitted by Premdor in that proceeding. The individuals involved in the activities referred to in the Plea Agreement may have additional information responsive to this interrogatory but as the Department of Justice investigation is not yet complete and these individuals cannot be compelled to be witnesses against themselves by supplying information either directly to plaintiffs or indirectly through Premdor, Premdor states that it will supplement its response to this interrogatory as and when additional information becomes available to it.

The responses to these interrogatories by Defendant Steves are similar. Steves prom-

ised that it would produce documents describing terms of the agreements between its customers and distributors, stated that it was not aware of any of its officers or employees agreeing to "stagger the issuance" of price sheets, and stated that there were two "chance" meetings between Steves and competitors at trade shows with no subsequent action by Steves. Steves also asserted, in response to interrogatories No. 10 and 12, that

> [t]his Interrogatory is premature at this time, since the Department of Justice investigation is not yet complete and these persons cannot be compelled to be witnesses against themselves by supplying information either directly or indirectly through the corporation by which they are employed. Steves states that it will supplement its response to the Interrogatory as and when additional information becomes available to it.

After submitting these answers to Plaintiffs, Defendant Premdor moved for a protective order. In this motion, Premdor asserts that the Government's grand jury investigation of the residential flush door industry is continuing and that the Government had not yet extended immunity to any employees, officers or agents of the Defendants in this case. Premdor contends that:

> In order to answer plaintiffs' latest interrogatories, Premdor would have to obtain information from the personal knowledge of its officers, agents, or employees involved in the events that led to the corporate guilty pleas. Every one of those individuals is subject to the risk of criminal prosecution, and will continue to be in jeopardy until the government investigation is completed. As a result of their fear of prosecution, these individuals have refused to provide Premdor with the information it needs to answer the interrogatories. For the same reason, these individuals would not provide the information in depositions on the merits. Premdor is in an impossible dilemma, because it cannot fully respond to plaintiffs' discovery requests without the information known only to certain individuals, and it cannot at

present compel those individuals to divulge that information.

Premdor Motion for a Protective Order, at 3. Premdor asserts that its dilemma is "temporary," and seeks a stay of further merits discovery until the criminal proceedings are completed. Subsequently, Defendants Steves and Ledco moved to join in Premdor's motion.

In its response to this motion for a protective order, Plaintiffs assert that any such stay of merits discovery until the completion of criminal proceedings would be inappropriate in that Defendants have already pled guilty and criminal proceedings as to the Defendants are complete. Plaintiffs numerous contentions include an assertion that Defendants' motion is an attempt to avoid negative inferences which may be drawn against Defendants in civil proceedings from any invocation of Fifth Amendment rights by Defendants' employees.

Plaintiffs have also filed a motion to compel Defendants Premdor and Steves to respond to Interrogatories No. 10, 11 and 12. In addition to the similar contentions made in their response to Defendants' motion for a protective order, Plaintiffs assert that their interrogatories seek to narrow issues for trial and that Defendants' responses require them to "search for the proverbial 'needle in the haystack'" in the over 100,000 documents Defendants have produced. Plaintiffs also assert that Defendants must presently possess information responsive to the interrogatories in light of their guilty pleas in federal court, and should not be able to avoid providing full and complete answers by "alluding generally to the knowledge that unnamed employees may have but may be unwilling to impart for fear of incriminating themselves."

C. *The August 11, 1995 Motion for a Protective Order*

On August 11, 1995, Defendant Premdor filed a motion for a protective order to stay discovery of certain subjects referred to in a notice of class discovery deposition served by the Plaintiffs on July 26, 1995. In response to a similar notice of deposition, Defendant Steves filed a motion renewing its earlier motion for a protective order and Ledco filed

a motion joining and incorporating Premdor's August 11, 1995 motion.

The notice of deposition requested Defendants to produce one or more officers, agents or representatives who could testify concerning a variety of issues. Defendants specifically objected to seven issues described as follows in the notice of the deposition of Defendant Premdor:

6. With respect to Defendant Premdor, its officers, employees, agents or representatives, any understanding, agreement, plan or scheme, express or implied, formal or informal, with any other person or any other residential flush door manufacturer, marketer, distributor or supplier, concerning residential flush doors pertaining to prices, published prices, quoted prices, prevailing prices, discounts, future business bids, territories, customers, allocation of business, discontinuation of any type or category of doors or other competitive activity.

7. The identity of any officer, employee, agent or representative of defendant Premdor who entered into any understanding, agreement, plan or scheme, express or implied, formal or informal, with respect to the items set forth in paragraph 6 above.

8. The identity of any person or any other residential flush door manufacturer, marketer, distributor or supplier who entered into any understanding, agreement plan or scheme, express or implied, formal or informal, with respect to the items set forth in paragraph 6 above with any officer, employee, agent or representative of defendant Premdor.

9. The date and terms of any understanding, agreement, plan or scheme, express or implied, formal or informal, with respect to the items set forth in paragraph 6 above and the states of the United States in which the participants and the customers affected were located.

10. The identity of any documents which refer or relate to any understanding, agreement plan or scheme, express or implied, formal or informal, with respect to the items set forth in paragraph 6 above.

11. Meetings with competitors pertaining to prices, pricing of doors, customers, bids to customers, or territories, the identity of all persons who initiated, called, organized or attended such meetings and all actions taken by defendant Premdor as a result of any such meeting.

12. The internal investigation undertaken by Howrey & Simon referred to at page 33 of the Transcript of Rearraignment and Sentencing before the Honorable Susan C. Bucklew, United States District Court Judge dated June 22, 1994, in *United States v. Premdor Corporation*, Case No. 94–120–CR–T–24(C) (M.D.Fla.).

In the notice of depositions of Defendants Steves and Ledco, Plaintiffs did not refer to a specific internal investigation but sought only information relating to "any internal investigation" undertaken by each Defendant "with respect to its involvement in price-fixing in the residential flush doors industry."

Premdor contends that Plaintiffs are merely seeking to discover information that is already the subject of its earlier motion for a protective order. Premdor also asserts that it agreed to an extension of class discovery from June 23, 1995 to August 8, 1995 only to permit Plaintiffs' completion of certain discovery requests, and not to engage in a "new wave" of class depositions.

In their response to Defendant Premdor's August 11, 1995 motion, Plaintiffs assert that the information they seek in specifications 6 through 12 are necessary to address potential arguments related to the scope and duration of the alleged price-fixing conspiracy by defendants in upcoming class certification proceedings. Plaintiffs also assert that, regardless of whether the depositions go forward as part of "class" discovery, they may take the depositions in accordance with established scheduling orders related to "merits" discovery, and that Defendants are not entitled to a stay of such discovery.

## II. Discussion

### A. *Stay of Discovery Proceedings*

"Special problems are presented when conduct that is the basis for civil antitrust claims is also the subject of criminal or administrative proceedings. Indeed, disclosure of a criminal or administrative investigation fre-

quently triggers the filing of civil actions ... The criminal charges should ordinarily be tried first, not only because of the requirements of the Speedy Trial Act but also because Fifth Amendment claims tend to disrupt civil discovery. A general stay of all activities in the civil litigation pending completion of the criminal case will rarely be appropriate, however." Manual For Complex Litigation 3d, § 33.14 at 306.

■ Courts have noted that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir.1967) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)). In considering a stay, courts have looked to the five factors discussed in *Golden Quality Ice Cream Co. v. Deerfield Specialty*, 87 F.R.D. 53 (E.D.Pa.1980): plaintiffs' interest and potential prejudice, burden on the defendants, burden on the Court, burden on non-parties, and the public interest.

■ After considering the interests of the parties, together with the Court's effort to bring complex litigation to an early disposition, as well as the factors set forth in *Golden Quality Ice Cream, supra*, the Court concludes that any stay of discovery would be inappropriate in these proceedings. The parties do not dispute that the criminal proceedings have concluded for each defendant in these civil actions, and Defendants have not identified any pending criminal proceedings against any of their officers, agents, or employees. Defendants' contention that discovery can nevertheless be stayed without prejudice to Plaintiffs until the completion of the Government's criminal investigation of unspecified others at an unknown future date is without merit. Defendants' additional contention that this Court will be overburdened by assertions of privilege as yet unmade is likewise without merit. Similarly, the Court finds that there is no merit to Defendants' prediction that the individual interests of De-

fendants' officers, agents, and employees might be prejudiced in the absence of a stay of discovery. Furthermore, the Court believes that the public interest may be prejudiced by any delay in discovery proceedings in these actions.

The Court has given particular consideration to Defendants' assertion that a stay would be appropriate on the ground that Defendants' officers, agents, and employees have allegedly refused to provide Defendants with the information needed to respond to Plaintiffs' discovery requests and also prepare Defendants' own case. Defendants' rely on *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), in which the Supreme Court reviewed the conviction of two corporate officials who were convicted of violations of the Federal Food, Drug and Cosmetic Act on the basis of evidence obtained in a contemporaneous civil condemnation proceeding initiated by the United States Government against the corporation and the officials. Although the Supreme Court reversed the Court of Appeals decision reversing the judgments of conviction, Defendants emphasize the Supreme Court's statement that:

> The respondents press upon us the situation where no one can answer the interrogatories addressed to the corporation without subjecting himself to a "real and appreciable" risk of self-incrimination. For present purposes we may assume that in such a case the appropriate remedy would be a protective order under Rule 30(b), postponing civil discovery until termination of the criminal action.

*Kordel, supra*, at 8–9, 90 S.Ct. at 768. Notably, the Supreme Court continued:

> But we need not decide this troublesome question. For the record before us makes clear that even though the respondents had the burden of showing that the Government's interrogatories were improper, they never even asserted, let alone demonstrated, that there was no authorized person who could answer the interrogatories without the possibility of compulsory self-incrimination. To the contrary, the record shows that nobody associated with the corporation asserted his privilege at all.

*Id.* In the instant actions, unlike in *Kordel,* each defendant has already entered a guilty plea in a criminal proceeding and has been sentenced to pay a substantial fine. Each defendant has stated in its plea agreement that it engaged in a conspiracy with others to fix, raise, and maintain the prices charged to certain U.S. customers for residential flush doors, in unreasonable restraint of trade in violation of the Sherman Antitrust Act. Again, unlike in *Kordel,* these plea agreements were executed by an officer of the corporation with the approval of the corporation. In light of the record, where Defendants agreed to a factual basis for their guilty pleas, a stay of merits discovery would be inappropriate. Moreover, as Wright, Miller and Marcus have observed:

> Suppose that interrogatories are directed at a corporation. The officer designated to answer them cannot object because the answers will tend to incriminate the corporation but he or she cannot be required to answer if the answers would tend to incriminate him or her personally. In this situation the burden on the corporation is to designate someone to answer on its behalf who can furnish as much of the requested information as is available to the corporation without fear of self-incrimination. The Supreme Court has suggested, without deciding, that if there should be a case in which no one can answer interrogatories addressed to the corporation without subjecting himself or herself to a risk of self-incrimination, the remedy would be a protective order, under what is now Rule 26(c), postponing civil discovery until termination of the criminal action. It is far from clear how this would work if no criminal action is pending and it is unlikely that a criminal action would actually be brought. In any event, the case is unlikely ever to arise since Rule 33(a) allows any agent of the corporation, even its attorney, to answer interrogatories on behalf of a corporation.

8A Wright, Miller & Marcus, Federal Practice and Procedure, § 2018 at 276.

For the above reasons, the Court will deny Defendants' motions for a protective order staying further discovery. As the motions for protective orders submitted in August 1995 rest on the same grounds as the earlier motions and incorporate those motions, the August 1995 motions for protective orders will also be denied.

### B. *The Motion to Compel Answers to Interrogatories*

■ In addition to many of the issues and contentions raised in the pleadings related to the protective orders, Plaintiffs' motion to compel also asserts that Defendants have failed to provide full and complete answers to interrogatories Nos. 10, 11, and 12 in that Defendants have failed to provide Plaintiffs with information they presently possess, given no specific details as to how Defendants have tried to obtain additional information, and referred Plaintiffs to over 100,000 pages of documents without further detail. In response to this assertion, Defendants contend that they have answered Plaintiffs' interrogatories as fully as possible and in sufficient detail, and will supplement their answers when their officers, agents and employees are able to testify without fear of criminal prosecution following the completion of any criminal investigation. In the instant actions, awaiting the completion of possible criminal investigations would only create an unnecessary delay in the discovery process and seriously interfere with the Court's efforts to bring this complex litigation to an early disposition. In light of the discussion *supra* and the Court's review of Defendants' answers to Plaintiffs' interrogatories, the Court will grant Plaintiffs' motion to compel answers to interrogatories.

### *ORDER*

AND NOW, this 18th day of September, 1995; Defendant Premdor having filed a motion to stay merits discovery; Defendant Steves & Sons having joined in this motion, and Defendant Ledco having also filed a motion to join; Plaintiffs having filed a motion to compel Defendants Premdor and Steves to respond to several interrogatories; Defendants Premdor, Steves, and Ledco having filed additional motions for protective orders related to class discovery depositions;

for reasons discussed in this Court's Memorandum of September 18th, 1995;

IT IS ORDERED:

1. Defendant Ledco's motion to join Defendant Premdor's motion for a protective order staying further merits discovery is GRANTED.

2. Motions by Defendants Steves & Sons, Premdor, and Ledco for protective orders staying merits discovery are DENIED.

3. Motions by Defendants Steves & Sons, Premdor, and Ledco for protective orders staying class discovery depositions related to specifications 6–12 in the notices of depositions served by Plaintiffs are DENIED.

4. Plaintiffs' motion to compel answers to interrogatories is GRANTED and Defendants Premdor and Steves shall serve full, complete and truthful responses to Plaintiffs' merits interrogatories Nos. 10, 11, and 12 by Monday, October 2, 1995.